## Dowell v. Dillon.

### (Decided December 21, 1917).

## Appeal from Breckinridge Circuit Court.

Adverse Possession—Boundaries.—Where one is mistaken as to the location of his line and makes his enclosure extending beyond the true line with the intention of claiming only to the true line, his claim will extend only to that line, but if he contends that the true line is beyond his enclosure and he makes it with the intention of claiming to the true line and continues to hold and claim the land thus enclosed for the statutory period of fifteen years, he will obtain a title to all of the land within the enclosure by adverse possession, since it is the intention with which the holding and claim are made that governs in determining whether it is adverse or amicable.

CLAUD MERCER for appellant.

W. S. BALL and H. DE H. MOORMAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant, plaintiff below, and appellee, defendant below, own adjoining lots in the town of Hardinsburg, Breckinridge county, Kentucky. The land included in both lots was formerly owned by James Miller, and lies within the space formed by the junction of the Hardinsburg and Leitchfield public roads, both of which run into Hardinsburg, defendant's lot occupying the northern point of the triangle, the apex of which is formed by the junction of the two roads, while the lot of plaintiff is just immediately south of defendant's lot. On March 28, 1881, James Miller deeded the northern part of the triangle formed by the two roads to H. D. Crosby, describing it but leaving the distances blank. The quantity of land conveyed as stated in the Crosby deed is "supposed to contain one and one-fourth acres, be the same more or less." In some way not shown by the record Miller afterwards regained the title which he conveyed to Crosby, and on September 14, 1881, he deeded to the defendant the northern part of the Crosby lot, describing the part so conveyed as "commencing at the corner of Mrs. Lucretia Moorman's adjoining the lot purchased at public sale of hers on the Hartford road by Judge Mercer, but not yet deeded to him, thence on a line of Mrs. Moorman's new plank fence to the Leitchfield road, thence with said road to where it and the

Hartford road intersects; thence with the original line
and with the Hartford road to the beginning, being a
part of the same lot deeded by first party to H. D. Crosby
by deed recorded in Deed Book No. 35, page 420, and
supposed to contain one acre, be the same more or less.''

On January 24, 1903, the heirs of James Miller, he
having died, conveyed the remainder of the tract of land
owned by the decedent to the plaintiff, the description
in his deed being: ''All of the remainder of the 3¾
acres of land purchased by James Miller of A. P. Hook
on the 17th day of April, 1880, not heretofore sold, and
is the lot that is bounded on the south by Mrs. Sarah
Hook, on the east by the Leitchfield road, and on the north
by Patrick Dillon and on the west by the Hartford road.''

Immediately after defendant purchased his lot he
took possession of it, moving into a residence located
thereon, which he has occupied continuously since. At
that time there was no fence erected upon or otherwise
marking defendant's south line separating his lot from
the remainder of the entire 3¾-acre tract. However,
there appears to have been a dwelling located on the south
end of the remainder, most if not all of the space between
the two residences being vacant. On the vacant space
south of defendant's residence, and abutting on the
Leitchfield road, he enclosed a parcel of ground on what
he supposed to be his lot being 20 feet and 6 inches north
and south and 101 feet east and west. This was done
shortly after he took possession under his deed, and he
used this as a cow and chicken lot and for storing fire-
wood continuously for more than fifteen years immedi-
ately before plaintiff procured his deed from the Miller
heirs. The testimony shows that this wood or cow lot
was in fact not a part of plaintiff's lot, but was imme-
diately south of his southern line. With matters in this
condition plaintiff purchased his lot, but defendant con-
tinued to use the cow lot in the manner stated until about
the year 1912, when the palings or planks composing a
part of the fence around the lot fell down from decay
and plaintiff stretched some wires around it and fastened
them to the posts which defendant had constructed as a
part of his fence. About that time plaintiff also erected
an ice house on the end of the cow lot abutting on the
Leitchfield road, and these acts of attempted ownership
of the cow lot on the part of plaintiff started the agita-
tion which finally resulted in this suit brought by plain-
tiff against the defendant to recover possession of the

cow lot and to quiet his title to all of the original Miller tract except the acre conveyed to defendant; the latter relief was asked because defendant was insisting that he purchased all of the lot conveyed to Crosby, consisting of one and one-quarter acres.

The answer consisted of a denial and insisted that the defendant obtained by his deed all of the land conveyed by the Crosby deed, and made claim to the cow lot by adverse possession, and as to that lot he also relied upon the champerty statute. Appropriate pleadings put in issue the allegations of the answer which was made a counterclaim, and after preparation and submission the court by its judgment dismissed the petition and adjudged defendant to be the owner of the cow lot by adverse possession, and to reverse that judgment plaintiff prosecutes this appeal.

Some three or four witnesses besides defendant testify without contradiction anywhere in the record that defendant shortly after he obtained his deed took possession of the cow lot and fenced it as indicated and that he openly and notoriously claimed it and used it continuously from that time until the filing of this suit, although some time prior thereto plaintiff had repaired the fence around it with wire, as heretofore stated. It is true that after plaintiff began to assert ownership of the cow lot defendant is shown to have made some remarks indicating that he did not claim that his south line would include all of that lot. However, at the time these statements are alleged to have been made defendant had already adversely occupied the lot for perhaps as much as twenty-seven years.

The chief if not the only contention made before us for a reversal of the judgment is that defendant's holding of the cow lot, although having it enclosed, was not adverse, because it is insisted that he claimed to own only the land covered by his deed and that the evidence shows that his deed does not include that lot, and in support of this position the cases of Turner v. Morgan, 158 Ky. 511; Small v. Hamlet, 24 Ky. Law Rep. 238; Crutchlow v. Beatty, 15 Ky. Law Rep. 468, and other cases of like import are relied upon, but we do not think that the doctrine which they announce is applicable to the facts of this case. That doctrine is that where one is in possession intending thereby to hold to the true line, wherever that may be, and with the intention to adjust his holding to the true line when it shall be fixed, such a

holding beyond the true line is not an adverse one.  The doctrine is bottomed upon the idea that the holding, although it may be by actual enclosure, of the part beyond the true line is not adverse because it was not held under a claim of right.  Illustrating this, in the Small case it is said: "Both parties seem from the proof then to have claimed only up to the true line, and they agreed for a surveyor to run out the line so that the fence might be reset, as it was then much overgrown with brush, and neither party was cultivating the ground for some feet on either side of it."

Pointing out the distinction between that character of holding and a truly adverse one, this court in the case of Turner v. Morgan, *supra*, said: "Nor was it (Morgan's claim) a mere holding beyond the true line for convenience until the true line could be definitely ascertained, as in the cases of Small v. Hamlet, 24 R. 238, and Reed v. Gilliam, 140 Ky. 824."

In this case defendant Dillon, while he says that he does not claim any land not conveyed to him by his deed, yet he insists, which he has continuously and consistently done, that he bought from his vendor all of the land covered by the Crosby deed regardless of the description contained in his deed.  He proves that at the time of his purchase a line supposed to be the southern line of the Crosby lot was pointed out to him as being the line of the lot which he was purchasing at that time.  Unlike the claims made in the Small case and other similar ones, defendant never acknowledged any line as being the true one except the southern line of the Crosby lot wherever that might be.

In the case of Turner v. Morgan, *supra*, it is stated that: "He (Morgan) also stated, however, that he claimed only the land covered by his deed, and had never at any time claimed otherwise. . . . In the case at bar Morgan claimed under his deed, but he also claimed that his deed included the land in dispute; he also claimed that the fence was on the true line, and that he claimed all the land up to that fence as his own land; and claiming it as his own precluded any possibility of admission upon his part of ownership in another. . . . In this case Morgan, acting under a mistake as to the true boundary between his land and that of plaintiff, took possession of the land of another, believing it to be his own, up to a mistaken line, claiming title to it, and so held it; and under the rule stated that holding was adverse."

So in this case Dillon claimed that the south line of the Crosby lot was the true line, and he claimed all the land up to that line, believing it to be his own; and although he was mistaken in this his holding must be considered as adverse.   1 Cyc. 1038; Arnold v. Evans (Texas), 140 S. W. 497; Bowers v. Ledgerwood, 25 Wash. 14; Turner v. Morgan, *supra;* Cooperage Co. v. Veneer Co., 135 Ky. 53, and many other cases which might be cited from this and other courts.

While defendant may not have intended to lay claim to any ground not covered by his deed, he still intended to claim all that he supposed that his deed covered, which was to a line lying south of the enclosed cow lot; and the fact that the true line, as indicated in his deed, would not include that lot will not have the effect to prevent his actual enclosing of it under the facts of this case from being adverse.   This same reasoning would also sustain the plea of champerty relied upon by defendant in his answer, since it must be admitted that if plaintiff's possession of the lot (cow lot) in dispute was adverse, plaintiff obtained no enforcible title thereto by his purchase during the defendant's adverse holding, and it is not disputed but that the defendant had the lot enclosed when plaintiff made his purchase.

We conclude then that the judgment appealed from was proper, and it is therefore affirmed.