[No. 1390. Decided November 19, 1894.]

JAMES McAULIFF, *Respondent*, v. HOLLON PARKER, *Appellant.*

ADVERSE POSSESSION—EVIDENCE—STATUTE OF LIMITATIONS— EFFECT OF SUBSEQUENT DISABILITY.

Adverse possession may be established by proof that the premises in controversy were generally reputed, in the community where situated, to belong to the party setting up such claim of title.

Possession by the grantee in a deed to land placed in escrow, but never delivered, and that of the grantees' agents, is the possession of the grantor for the purposes of adverse possession.

When the statute of limitation has commenced to run against a party, its operation is not arrested by his subsequent death, before the end of the statutory period.

Adverse possession for ten years subsequent to the passage of the Code of 1881, is sufficient to bar a recovery, although at the time the right of action accrued the limitation was twenty years.

*Appeal from Superior Court, Walla Walla County.*

*Lester S. Wilson,* for appellant.

*George T. Thompson, Moses P. O'Brien* and *James T. Jones,* for respondent.

The opinion of the court was delivered by

DUNBAR C. J.—On August 30, 1893, the plaintiff brought his action in ejectment to recover possession of a certain lot in the city of Walla Walla, which it was alleged belonged

to the estate of plaintiff's intestate, Henry Marlin, deceased, and that it was in the unlawful possession of the defendant. The complaint is in the ordinary form of ejectment, and prays for the possession of the property and the recovery of the rents and profits during the period of such alleged wrongful detention. The defense was two-fold, first, that the defendant had acquired title to the land and premises in controversy by open, notorious, exclusive, adverse, hostile possession thereof, for the statutory period next before the commencement of the action ; and second, an equitable defense, viz., that the defendant being the owner in fee and in possession of the land described, on the 28th day of February, 1879, made, executed and delivered to Marlin, plaintiff's intestate, a deed of conveyance of said land for the purpose of securing the repayment of the loan of $300, made by said Marlin to the defendant on said date, and for no other purpose ; and that the said Marlin received said deed of conveyance and held the title thereunder as security for the repayment of said loan, and for no other purpose ; that afterwards, in October, 1879, the defendant repaid the said Marlin the sum borrowed, and at the request of this defendant said Marlin and his wife conveyed, by good and sufficient deed, in fee, to Orrin Parker, a. brother of this defendant, and in trust for this defendant, the said land and premises in discharge and release of the said land ; that the said deed of conveyance by Marlin and wife to said Parker was mislaid and lost, and was never recorded nor filed for record ; and that the defendant, after diligent search, was unable to find the same. The reply controverted the affirmative facts set up in the answer. The case was tried by a jury who returned a verdict for plaintiff, awarded him the ownership and possession of the premises, and $253 rents and profits.

In the course of his testimony tending to establish adverse possession for the statutory period, the defendant offered to show that the premises in controversy were generally reputed to belong to the defendant from 1880 down to the commencement of the action, in the community where it was situated. The court excluded this testimony as incompetent and im-

material. This ruling of the court is alleged by the appellant to be error. This contention of the appellant we think must be sustained, both on reason and authority. All the authorities hold that the question of adverse possession is a question of fact, and it must be a possession that is known to the owner of the legal title. If there is direct proof that the owner of the legal title knew of the adverse possession, it is not necessary to go further, but the presumption is that if the adverse possession is open and notorious the owner of the title will know it. The reputed possession is certainly some evidence that the owner is aware of such possession. This principle is substantially promulgated by Buswell on Limitations and Adverse Posssession, in § 249, where that author says:

"When the owner of the legal title has actual knowledge that his land is being held against him under claim of right it is obvious that the fact of the notoriety of the adverse possession becomes immaterial (citing *Clark v. Gilbert*, 39 Conn. 94). But when it does not appear that the owner has such actual notice, the occupation must, in order to be effectual, be visible and notorious, inasmuch as the law, in giving title by adverse possession, proceeds upon the ground that there has been an acquiescence upon the part of the owner of the land, which acquiescence cannot be presumed if an occupation be clandestine."

This question was directly decided in the case of *Sparrow v. Hovey*, 44 Mich. 63 (6 N. W. 93). Judge Cooley, speaking for the court in that case, said:

" Defendant having shown his possession for the requisite length of time, under tax titles which are now conceded to be invalid, was suffered to prove that the land was generally understood to be and called his, in the neighborhood. Exception was taken to this evidence, but we think it was competent. It tends to establish the notoriety of defendant's possession and claim of title ; which were important facts in his defense.".

If for no other error the judgment in this case would have to be reversed, for it seems to us that, under the undisputed testimony in this case, the appellant has made his claim good by adverse possession. It is undis-

puted that Parker, as attorney in fact of Orrin Parker and wife, executed a deed of the premises to one Mooers, on October 9, 1880. This deed was placed in escrow to be delivered when the bargain was consummated. This bargain was never consummated, and there is no testimony attempting to show that it was. The testimony conclusively shows that from and after October, 1880, Mooers remained continuously in possession of the premises by himself and agents and tenants, under the terms of the contract of sale and lease between Parker and Mooers, until 1891, when Parker repudiated the transaction, ousted Mooers' tenant, and re-took possession and control as owner, which he maintained until the commencement of the action, the deed of conveyance from Parker to Mooers never having been delivered.

Under all the authority, of course Mooers' possession was the possession of Parker, and plaintiff does not contend but that Stine, who seems to have had possession of the place for several years as Mooers' agent, acted exclusively for Mooers, and claimed no authority over the land or any right of possession except the rights which he obtained from Mooers. We say the testimony on this proposition is so absolutely conclusive that the jury could have rendered but one verdict, so far as the question of ownership is concerned, if they had applied to the facts the law given them by the court, which was as follows, viz., that :

"If any person or persons, during the ten years next before the commencement of this action, were in the continuous, connected possession of the lands and premises in controversy in this action, as a tenant or tenants of the defendant Hollon Parker, or as claimant who derived the right of possession thereof through said defendant, but not under the deed from Parker to Marlin, then such possession and all thereof must be deemed to be the possession of this defendant, and this is so regardless of whether the said defendant Parker collected rents in such possession or not. Further, that the contended possession of any person or persons of the premises in controversy, other than the defendant, who claim their right to such possession through said Hollon Parker, either as tenants or by any other

authority consistent with the ownership of the premises in said Parker, is the possession of said Hollon Parker.''

In answer to interrogatory 3 the jury specially found that '' Mooers derived his possession of the premises in controversy from H. Parker and that the defendant Parker let Mooers into possession of the lands and premises in controversy under contract of sale.'' With these two propositions established by the jury, which they must have been under the law applied to the facts as proven, it must follow that the possession of the premises in controversy, from the time that Mooers entered into possession under the contract of sale up to the time of the commencement of the action, was in Parker, and there can be no question under the testimony but that such possession was open, notorious and adverse to the respondent's claim.

It was contended in oral argument by the attorney for respondent, that conceding the statute of limitations to have commenced running against respondent in 1880, it ceased to run upon the death of plaintiff's intestate Marlin in 1890; and that, consequently, the statute has not yet run its full course against respondent's claim. The settled law of the country is opposed to this contention. In discussing the general principles of the statute of limitations, Wood, in his first volume on Limitations, page 9, says:

'' One of the most important and universal rules (which is not, however, without exception) is, that time, when it has once commenced to run in any case, will not cease to do so by reason of any subsequent event which is not within the saving of the statute. Thus, it has been held that it is no answer to a plea of the statute, unless otherwise provided therein, that, after the cause of action accrued, and after the statute had commenced to run, the debtor within six years died, and that by reason of litigation as to the right of probate, an executor of his will was not appointed until after the expiration of six years, and that the action was brought within a reasonable time after probate was granted.'' Citing *Rhodes v. Smethurst*, 4 M. & W. 42; *Daniel v. Day*, 51 Ala. 481; and many other cases from Oregon, Vermont, Wisconsin, Illinois, Alabama, Kentucky, the United States Supreme Court, Maryland and South Carolina.

The general holding of the courts is that the statute of limitations does not begin to run until there is some one to sue or liable to be sued; but that when the statute once begins to run the death of another party does not impede its operation. For instance, in case the action arises after the death of a party to a contract, then the statute would not begin to run until an administrator or representative was appointed. But if it arose before, the death or disability would not interfere with the running of the statute; as the rule is laid down by *Hogan v. Kurtz*, 94 U. S. 773, that when the statute begins to run it is not arrested by any subsequent disability, unless expressly so provided in the statute, and the person who claims the benefit of general exceptions in the statute can only avail himself of such disabilities as existed when the right of action first accrued.

In *Doe v. Jones*, 4 T. R. 300, Lord Kenyon said:

"I confess I never heard it doubted till the discussion of this case, whether, when any of the statutes of limitations had begun to run, a subsequent disability would stop their running. If the disability would have such an operation on the construction of one of those statutes, it would also on the others. I am very clearly of the opinion on the words of the statute of fines, on the uniform construction of all the statutes of limitations down to the present moment [1791], and on the generally received opinion of the profession on the subject, that this question ought not now to be disturbed. It would be mischievous to refine, and make nice distinctions between the cases of voluntary and involuntary disabilities."

The same construction was placed upon the statute of limitations by Chief Justice Marshall, in *Walden v. Gratz's Heirs*, 1 Wheat. 292. In fact, it is the universally accepted doctrine, both in England and the United States. The exception mentioned above applies to cases of war, where public policy and the necessities of the case require that the statute should be suspended.

It was also contended by the respondent that this case falls within the old statute of limitations which required twenty years adverse possession, but the ruling of this court in the case of *Baer v. Choir*, 7 Wash. 631 (32 Pac. 776), has put

that question at rest, as it was there decided that it was sufficient in any event if ten years had elapsed after the passage of the act of 1881.

The testimony, then, in this case, showing conclusively to our minds that the possession of appellant Parker had ripened into a right under the statute of limitations, it seems to us unnecessary to reverse the case and send it back for another trial. The judgment will, therefore be reversed and the cause remanded with instructions to the lower court to give judgment to the appellant with costs. Appellant will also recover costs in this court.

HOYT and STILES, JJ., concur.