[No. 3706.  Decided April 23, 1901.]

GEORGE F. BOWERS, *Respondent,* v. THOMAS J. LEDGERWOOD, *Appellant.*

ADVERSE POSSESSION — WHAT CONSTITUTES.

The inclosure of the lands of another within a fence built by the adjoining owner, under the mistaken impression that such fence constituted the boundary line, and the occupancy, cultivation, and improvement of such inclosed lands, for a period beyond the statute of limitations, by planting an orchard, digging a well, and placing a barn and outbuildings thereon, are sufficient to constitute title thereto by adverse possession, when such possession has been open, notorious, exclusive, continuous, and under claim of ownership.

Appeal from Superior Court, Lincoln County.—Hon. CHARLES H. NEAL, Judge.    Reversed.

*Myers & Warren,* for appellant.

*Martin & Grant* and *Wright & Wright,* for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Action in ejectment.  The action was commenced against the tenant in possession, Hendron, but the appellant was substituted as defendant by order of the court.  The defendant in his answer disclaims any

interest in the premises demanded, except a small strip of land containing fifteen or twenty acres, and claims title to such strip by adverse possession for a period of more than ten years. The title to this strip of land was the only question in issue. At the conclusion of the testimony the court discharged the jury and found the facts, to which finding of facts no exception was taken by either party. The facts were, in substance, that the land in dispute is a narrow strip of fifteen or twenty acres extending along the entire eastern portion of section 1, township 26 N., of range 36 E., W. M., Lincoln county; that east of a certain fence, and immediately east of section 1 is section 6, township 26, range 37, same meridian; that there is now, and has been since 1880, a county road running in a northerly and southerly direction across the entire eastern portion of section 1, and on the east side of this road there is, and has been since 1885, a rail fence which forms the westerly boundary line of the strip of land in controversy; that in 1880 defendant Ledgerwood filed upon lots 4, 5, 6 and 7, in section 6, as a homestead, which land is immediately east of and adjacent to the tract of land in dispute; that Ledgerwood immediately settled upon, and made his residence and home upon, the premises including the tract in dispute, and that in 1885 he built and constructed the fence above mentioned, which fence was then, and is now, the western boundary of the line in dispute; that, at the time of building the fence, Ledgerwood believed that the same constituted the western boundary line limit of his homestead; that there is not now, and never has been since 1880, any other fence or division line between sections 1 and 6; that in 1887 Ledgerwood received patent for his homestead, which was duly recorded in the auditor's office; that in 1881, he broke, ploughed, and cultivated the

tract of land in dispute, to the fence; that in 1888 he constructed a dwelling house of the value of $400, which house has at all times been occupied by him and his father and mother and tenant, until the commencement of this suit; that in 1886 defendant planted an orchard upon the tract in dispute, the trees being planted as near as ten feet to the fence, and he had also put other improvements on said tract, consisting of a barn and outbuildings and a well; that section 1, which includes the tract of land in dispute, was part of the grant to the Northern Pacific Railroad Company under the act of congress of July 2, 1864, and that the map of definite location of the railroad was filed in the general land office on October 4, 1880; that on the 24th of October, 1895, a patent was issued to the railroad company for said section 1; that on the 15th of September, 1898, plaintiff, in consideration of $159.63, to be paid in five years, by contract purchased lots 1 and 2 on the south one-half of the northeast one-fourth and the southeast one-fourth of said section 1 from the railroad company; that at the time of such purchase plaintiff knew that a portion of the land so purchased was east of the fence, and that the same was in the possession of and claimed by the defendant, and that plaintiff had been a resident near this land for a number of years, and knew of the improvements upon the tract in dispute, and upon which defendant was living; that on the 18th of March, 1899, the plaintiff demanded possession of the tract of land in dispute. Upon such findings, the superior court adjudged the tract in dispute to the plaintiff.

It will be observed there is no controversy as to continued, uninterrupted occupancy by the defendant of the tract in controversy for a period of more than ten years; and the facts certainly establish that the claim and domin-

ion of defendant over the tract was exclusive and inconsistent with any other theory than the claim of ownership, and entitled the defendant to recover in this action, unless we admit the contention urged by counsel for respondent—that the unintentional inclosure or use of a strip of land owned by another and lying next to the boundary, the location of which is not clearly known, will not constitute adverse possession. Counsel have industriously cited a number of authorities in which general expressions apparently sustain their contention.   Among those which are most pertinent are *Preble v. Maine Central R. R. Co.,* 85 Me. 260 (27 Atl. 149, 21 L. R. A. 829, 35 Am. St. Rep. 366); *Krider v. Milner,* 99 Mo. 145 (12 S. W. 461, 17 Am. St. Rep. 549); *East Tennessee Iron & Coal Co. v. Ferguson's Heirs* (Tenn.), 35 S. W. 900; *Schleicher v. Gatlin,* 85 Tex. 270 (20 S. W. 120); *Worcester v. Lord,* 56 Me. 265 (96 Am. Dec. 456).   In *McAuliff v. Parker,* 10 Wash. 141 (38 Pac. 744), the court observed:

"All the authorities hold that the question of adverse possession is a question of fact, and it must be a possession that is known to the owner of the legal title."

In an authority cited in *Caufield v. Clark,* 17 Ore. 473 (21 Pac. 433; 11 Am. St. Rep. 845), is found, perhaps, a fair statement of the legal rule controlling title by adverse possession.   The court said:

"If one by mistake inclose the land of another, and claim it as his own, his actual possession will work a disseizure, but if, ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the lands up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the lands of the adjoining proprietor, his possession of the land is not adverse."

The facts in the Oregon case are very similar to those in the present case.   They were that the adverse claimant

there occupied and claimed title to the fence as originally located, which was not on the line described in the deed, although by mistake he supposed it was on such line. The court observed:

"We think, therefore, the fence has become the true boundary line of the adverse possession and that the plaintiff [claimant] is entitled to have the decree of the court below modified, so as to establish such line in accordance therewith."

In *Grimm v. Curley*, 43 Cal. 250, the facts were also similar to those under consideration here. The plaintiff deraigned title by written conveyance to a city lot. Defendants entered upon a portion of the lot under deeds conveying to them portions of another and adjoining lot, and inclosed and improved a portion of the lot within the calls of plaintiff's conveyance for a period beyond the statute of limitations of California. It was ruled that the claim of title by adverse possession was good in defendants. The court observed:

"The action was commenced in June, 1869, and it appeared in proof that the defendants entered more than ten years before the commencement of the action, under deeds purporting to convey to them severally portions of lot numbered one thousand three hundred and eighty-one. It further appears that they entered upon the demanded premises in good faith, under the belief that said premises were a portion of lot number one thousand three hundred and eighty-one, and were included within their respective deeds. It also appears that from the time of their entry they have been in the continuous, open, notorious, and adverse possession, claiming to hold and own the same adversely to all persons whomsoever. A possession of this character comes fully within the definition of an adverse possession, as established by an unbroken current of authorities."

See, also, *Levy v. Yerga*, 25 Neb. 764 (41 N. W. 773,

13 Am. St. Rep. 525); Am. & Eng. Enc. Law, 248; *Cole v. Parker,* 70 Mo. 372.

As heretofore observed by this court, the question of adverse possession is one of fact; and, though the fence may have been established originally by mistake, if it were followed by a claim to the land and such acts as clearly evinced a determination of permanent proprietorship, the claim is established. The intention of the party claiming adverse possession, and also the notice of such claim to the real owner, must be inferred from the acts and declarations of the parties. In looking at the facts found by the superior court, the conclusion seems to be almost irresistible that the defendant,—a farmer who settled upon his homestead in 1880, and lived thereon and improved the same thereafter, certainly as early as 1885, when he placed a substantial dwelling house thereon, and barn and outbuildings, and dug a well and planted an orchard,—intended permanent proprietorship. He had cultivated the land since 1881. It would seem inconsistent with the ordinary conduct and intentions of men to say that these things were done without the claim of absolute dominion over this tract of land, or to conclude that it was not notice to the real owner. We therefore have arrived at a different conclusion from the superior court upon the facts found in the case, and conclude that the occupancy of the tract of land in dispute by the defendant was under a claim of right, and notorious and adverse to all other persons.

The judgment is reversed with direction to enter judgment for the defendant.

Fullerton, Anders and White, JJ., concur.