## Jones, et al. v. Lickliter.

(Decided September 30, 1913).

### Appeal from Laurel Circuit Court.

1. Vendor and Purchaser—Effect of Judicial Sale to Pay Purchase Price.—When land is sold to pay the purchase price, the effect of the sale is to divest the purchaser of any interest in the land, and if he remains in possession after the sale, his possession is not hostile to the possession of the purchaser at the judicial sale.

2. Ejectment—Title From Common Source.—When both parties to an ejectment suit claim title under a common source, it is not necessary for the plaintiff to trace his title farther back than the source from and under which both claim.

3. Executors and Administrators—Purchase of Land at Judicial Sale by Administrator—Title.—When land is purchased at a judicial sale by an administrator, the purchase will have the effect of vesting in him title to the land as trustee for the benefit of the heirs of his intestate.

SAM C. HARDIN and WILLIAMS & JOHNSON for appellants.

HAZELWOOD & JOHNSON for appellee.

Opinion of the Court by Judge Carroll—Affirming.

The appellee, claiming to be the owner and in possession of a tract of land described in his petition, brought this suit in equity against the appellants, John R. Jones, et al., to restrain them from trespassing on the land and removing timber and material therefrom.

The appellants, after traversing the petition, set up that they were the owners of the land by adverse possession. The appellants did not introduce any evidence, and when the case was submitted, upon the evidence of appellee, a temporary injunction previously granted was perpetuated and the appellants perpetually enjoined from trespassing on or otherwise interferring with appellee.

On this appeal it is the contention of counsel for appellants that it was necessary to entitle appellee to judgment that he should show a legal title deducible from the Commonwealth, and that his failure to do this entitled appellants to a judgment; and further insisted that the evidence shows that the legal title to and the possession of the land is in appellants and not appellee. For the appellee the argument is made that even if appellee did not exhibit a good paper title to the land, that his actual possession of the premises authorized him to maintain an action for trespass on his possession, and likewise an action to enjoin such trespass.

The evidence shows that some time prior to 1883 one Jarvis Jackson sold and conveyed the land in dispute to the appellant, John R. Jones, who took possession under the sale and received a deed, which was never put to record; that he executed a note for the deferred payment, and after the death of Jarvis Jackson suit was brought on this note to subject the land to its payment. This suit progressed to a judgment and the land was ordered to be sold to pay the debt, and was sold, and 'at the sale the whole of the land was bought by the administrator of Jarvis Jackson for the amount of the debt. This sale was confirmed, but it seems that no deed was made by the court and thus the matter stood for many years.

It is further shown by the evidence that Jarvis Jackson left surviving him one child, J. C. Jackson. The evidence upon the point that J. C. Jackson was the only heir and child of Jarvis Jackson is not as clear or direct as it should be, but we think the reasonable and fair

inference from the record is that J. C. Jackson was the only heir and child of Jarvis Jackson.

It further appears that J. C. Jackson died, leaving surviving him only two children, and these two children conveyed in 1911 the land in controversy to Lickliter. It is further shown that while Jones, under his purchase from Jarvis Jackson, took possession of the land and held it for a time, that for twenty years at least no one had been either in the actual or constructive possession of it. It was not for many years enclosed by any fence, nor has there been any habitable or occupied house on it. It also appears that Jones, if he ever claimed the possession, abandoned such claim, because he made several attempts to buy the land from the children of J. C. Jackson.

When the land was sold to satisfy the unpaid purchase money due by Jones, and purchased by the administrator of Jarvis Jackson, this sale and purchase had the effect of vesting the title in the administrator as trustee for the benefit of the heirs of Jarvis Jackson, and the further effect of divesting Jones of any title he may have had to the land, and if he continued in possession of the land after that time his possession was not hostile to the possession of the purchaser at the judicial sale. Cryer v. McGuire, 148 Ky., 100. So that under the circumstances Jones has no title or claim to the land resting on possession that is available to him in this controversy.

In respect to the argument that it was incumbent upon Lickliter, before he could maintain the action, to show a title deducible from the Commonwealth when his title was put in issue, as it was by the answer of Jones, it is a sufficient answer that any title that Jones relies on begins with the conveyance of the land to him by Jarvis Jackson, and as Lickliter, as well as Jones, claim title from and under this common source, it was not necessary that Lickliter should go back to the title of Jarvis Jackson in an effort to show that he had a good paper title to the land. Luen v. Wilson, 85 Ky., 503; Gaulbaugh v. Rouse, 31 Ky. L. R., 1195. Under the facts shown by the record, when this action was brought Lickliter had not only the possession of the land, but a title to it that Jones was not in a position to dispute, and, therefore, the court properly adjudged Lickliter the relief he sought.

The judgment is affirmed.