STATE ex rel OKLAHOMA EMPLOYMENT SEC. COM. v. DEAN.

No. 32709.   Sept. 16, 1947.

Rehearing Denied Dec. 2, 1947.

Second Petition for Rehearing Denied Jan. 20, 1948.

*188 P. 2d 355.*

Bruton Wood, Burton Duncan, and Gerald S. Tebbe, all of Oklahoma City, for plaintiff in error.

Steele & Boatman and L. L. Cowley, all of Okmulgee, for defendant in error.

DAVISON, V.C.J. This action was brought by plaintiff, T. J. Dean, to quiet his title to certain real estate in Okmulgee, Okla., as against the defendant, State of Oklahoma, on relation of the Oklahoma Employment Security Commission, which claimed a lien thereon by reason of the filing of a tax warrant, in the office of the court clerk of Okmulgee county, showing alleged delinquent unpaid assessments against plaintiff under the provisions of the Oklahoma Employment Security Act. The parties will be referred to as they appeared in the lower court.

Plaintiff was the owner of the Dean Drug Company, in said city, and in the latter part of 1936, by permitting the use of his credit rating and by the loan of money, assisted his two sons-in-law in organizing and opening their partnership business, known as the Corner Drug Store. If the two stores were owned or controlled by plaintiff, he would be an "employer" within the terms of the above act. If they were not, he would not be such employer, and would not be liable for assessment for contributions for the years 1937 and 1938, the years herein involved.

In February, 1939, a field auditor for the commission made an audit of the books of the Corner Drug Store, at a time when both of plaintiff's sons-in-law were out of town. From this audit he prepared reports which plaintiff signed because of the absence of the owners. This the plaintiff did, at the suggestion of the auditor, and without reading or checking the reports.

Subsequently, and in July, 1939, suits were filed against plaintiff by Pat Murphy, Commissioner of Labor, for the collection of contributions as provided by chapter 52, §14 (b), S. L. 1936.

In 1941, while these suits were pending and before any determination therein, the Legislature passed the Oklahoma Employment Security Act. 40 O. S. 1941, §§211-229, which amended or supplanted all former acts relative to the assessment, enforcement and collection of such contributions, one section thereof providing for the issuance of a tax warrant in the case of unpaid assessments. Tax warrants were issued by defendant herein and the above actions were subsequently dismissed January 16, 1942.

This suit was then filed, resulting in a judgment for plaintiff, from which this appeal was perfected.

For reversal, six assignments of error are presented, but they resolve themselves into various subdivisions of the one proposition, that the Oklahoma Employment Security Act provides a legal procedure for the determination of the validity of the assessments and therefore plaintiff cannot invoke the jurisdiction of a court of equity to collaterally attack the tax warrants, which are clothed with the finality of a judgment; and that said act did not authorize this kind of action against the state.

This case involves the interpretation of certain parts of 40 O. S. 1941, §224, as follows:

"(b) (1) Collection. If any employer defaults in any payment of contributions, interest, or penalty thereon, the amount due may be collected by civil action in the name of the State of Oklahoma . . .

"(4) Civil actions brought hereunder to collect contributions, interest or penalty thereon, from an employer, must be commenced within three years after the date on which the report or

return was filed or was required to be filed.

"(e) Assessments. If any employer shall fail to make any report or return as required by this act, the commission or its duly authorized representative, from any information in his possession or obtainable by him may determine the amount of contribution so determined against such delinquent employer, and mail or otherwise deliver a copy of said assessment to the delinquent employer. The assessment so made shall not preclude the commission or its representative from making field audits of the books and records, wherever located, of the employer and from making further adjustments, corrections or assessments. The assessments provided for herein must be made, and a copy thereof delivered to the employer or mailed to his last known address, within three years from the date on which the report or return was required to be filed; provided, that nothing in this subsection shall be construed to extend the time within which any civil action may be commenced, as provided in subsection (b) (4) of this section . . ."

"(h) Warrant. If any contribution imposed by the provisions of this act, or any portion of said contribution, be not paid before the same becomes delinquent, the commission may immediately issue a warrant under its official seal, directed to the sheriff of any county of the state, commanding him to levy upon and sell any real or personal property of any delinquent employer found within his county for the payment of the delinquent contribution, and interest, and the cost of executing the warrant, and to return such warrant to the commission, and to pay it any moneys collected by virtue thereof, by a time to be therein specified, not more than sixty (60) days from the date of the warrant. . .

"In any action involving the title to real estate, or the ownership or right to possession of personal property, the State of Oklahoma may be made a party defendant for the purpose of determining any lien claimed by it upon the property involved therein; and in any such action, service of summons upon the commission or any member thereof, shall be a sufficient service

and binding upon the State of Oklahoma."

It will be seen that these provisions contemplate two steps in the enforcement of contributions from an employer: First, assessment; second, collection. Two methods are provided for the accomplishment of each step. The assessment may be made upon the voluntary return made by the employer or, upon his failure to make such return, the assessment may be made by the commission in the manner outlined by said act. Upon making the assessment, the commission is required to give notice to the taxpayer, who may protest the same and be heard thereon. The act also provides for appeal therefrom to the district court.

To enforce collection, the commission may bring a suit in the district court or may proceed summarily by the issuance of a tax warrant. In this case the latter course was followed. That part of the above act with reference to assessments deals with the amount of the tax and not with the determination of the applicability of the act in specific cases. Therefore, the administrative procedure, and appeal to the courts from the rulings of the commission, in determining such amounts, are propositions not involved herein. The questions involved are whether or not the plaintiff is an employer within the meaning of the Employment Security Act, and the jurisdiction of the court to determine that question in this action.

During the years herein involved, 1937 and 1938, the only method provided for collection of the assessments was by suit in the district court (chapter 52, §14 (b), S. L. 1936), under which actions were pending when the 1941 act was passed. The latter act in effect merely provided an additional method of procedure by the issuance of the tax warrant. In the same subsection, authorizing such warrant to be issued, provision was made allowing the taxpayer to determine his status as an employer by "determining any lien

claimed" by reason thereof "in any action involving the title to real estate."

This case does involve the title to real estate and the court, therefore, had jurisdiction to determine the validity of the tax warrant and whether or not it constituted a lien upon plaintiff's property. In such a case the state may be sued by reason of the plain and unambiguous statute, supra. See, also, State ex rel. Com'rs of Land Office v. Lewis, 197 Okla. 288, 170 P. 2d 237.

The trial court had only one question of fact to determine: Was plaintiff an employer as defined by 40 O. S. 1941, §229 (e) (4)? If he was, the tax constituted a lien. If he was not, the record of the warrant should have been canceled.

In order for plaintiff to have a sufficient number of employees to come within the purview of the act, it was necessary for the Corner Drug Store to be under his "control". In State ex rel. Oklahoma Employment Security Commission v. Tulsa Flower Exchange et al., 192 Okla. 293, 135 P. 2d 46, we said:

"The word 'control' should be accorded its full and complete meaning with due regard to the general purpose for which it was used in the statute. The statute in no way limits its meaning. The word as there used should be held to mean full power and authority to manage and direct every act, and to formulate every business policy, of the employment unit, without right of legal interference from any one with respect to all lawful pursuits."

Plaintiff did not control the Corner Drug Store within this definition. The fact that he signed the return does not change his position. The return constituted merely an assessment of the amount of tax if, upon a hearing before the court, plaintiff was found to be an "employer". This question could be raised as a defense to a suit by defendant to collect the tax or could be determined "in any action involving the title to real estate". This is in no way in conflict with the holding in the Missouri cases of State ex rel. Keitel et al. v. Harris, 353 Mo. 1043, 186 S.W. 2d 31, and Henry et al. v. Manzella et al. (29, 750), Mo. Sup. 201 S.W. 2d 457, and others cited by defendant, which deal with the authority of the commission to issue a tax warrant; not with the authority of a court to determine its validity.

The evidence introduced in behalf of plaintiff was to the effect that he had no interest whatsoever in the Corner Drug Store other than that plaintiff used his credit and past experience in financing his two sons-in-law, Crutchfield and Leigh, in the drugstore business; that the sons-in-law had made partial payments back to plaintiff; that at no time did plaintiff ever take over the Corner Drug Store nor assume actual control thereof. The testimony of plaintiff was corroborated by both sons-in-law; that the Corner Drug Store was a partnership composed of Jack Crutchfield and W. A. Leigh and duplicate originals of partnership returns were introduced in evidence reflecting the fact that Crutchfield and Leigh were partners in the business; that Crutchfield was a graduate pharmacist.

The only evidence in the record tending to place plaintiff in the position of owner of both drug stores is composed of the two reports prepared by the auditor of the defendant and signed by plaintiff at the auditor's request and insistence without reading them. Defendant contends that this constituted estoppel, but as said in Simmons v. Chestnut-Gibbons Grocery Co., 70 Okla. 161, 173 P. 217:

"Estoppels operate only between parties and privies, and the party who pleads an estoppel must be one who has, in good faith, been misled to his injury."

The defendant could not have been misled by such reports nor was there any change in position in reliance upon them. In addition, we have consist-

ently held that estoppel, to be available, must be pleaded, which was not done herein.

The judgment of the trial court is sustained by the great weight of the evidence and the same is hereby affirmed.

HURST, C.J., and RILEY, WELCH, CORN, and LUTTRELL, JJ., concur.