**BREWSTER et al. v. HERRON.**

No. 35138.

Supreme Court of Oklahoma.

Dec. 2, 1952.

Rehearing Denied April 14, 1953.

Application for Leave to File Second
Petition for Rehearing Denied
March 2, 1954.

Geo. T. Arnett and Paul Harkey, both of
Idabel, for plaintiffs in error.

Jack Bradley, of Hugo, Robert E. Lee
and Ed Shipp, both of Idabel, for defendant
in error.

GIBSON, Justice.

The parties will be referred to as they
appeared in the trial court. Defendant in
error was plaintiff, and commenced this ac-
tion to quiet title to Lots 1 to 5, inclusive,
in Block 8 of Lone Pine Addition to Idabel,
Oklahoma, by filing his petition in the Dis-
trict Court of McCurtain County on June
11, 1947.

Conflicting claims of title arise by virtue
of the proceedings in an action to foreclose
a real estate mortgage given by a former
owner, Ida Jones. Plaintiff claims by mesne
conveyances of the heirs of said mortgagor
and adverse possession, and defendants
claim by virtue of mesne conveyances of
one mortgagee and the heirs of a second
mortgagee. Primarily the case must turn
on the application of the fifteen year statute
of limitations, Tit. 12 O.S.1951, § 93.

The events giving rise to this litigation,
stated chronologically, are as follows:

All parties agree that title to the property
was held by one Ida Jones prior to and aft-
er September 3, 1924. On that date she
executed a mortgage on said real estate to
secure a note for $500 in favor of Easton
Billy, guardian of Dora Wade and Alex-
ander Wade, minors. Upon default a fore-
closure action was commenced.

May 6, 1927, a decree of foreclosure was rendered, and execution issued. June 1, 1927, Ida Jones died, and the action was never revived as against her heirs or representatives.

Octa Jones, a daughter of Ida, continued in possession of the property and on June 4, 1927, all other children and heirs of Ida Jones executed and delivered deeds to Octa Jones. These heirs were not parties to the foreclosure proceedings.

June 27, 1927, the property was sold by the sheriff of McCurtain County to Dora Wade and Alexander Wade, the judgment creditors.

December 31, 1927, Dora Wade died, and there has been no revivor as to her heirs or representatives.

Octa Jones continued in open and notorious possession of the property and paid taxes on the same throughout the years of her ownership.

Nothing further occurred in the foreclosure proceedings until January 3, 1940, when, following the filing of a motion, the court entered its order confirming the sheriff's sale above mentioned and ordered the sheriff to execute a deed to Alexander Wade and Ida Wade (now McGee), the court finding that these grantees were the heirs at law of Dora Wade.

June 14, 1945, Octa Jones (now Bateman) executed a warranty deed conveying the property to Ira Rone, who on June 19, 1946, conveyed to plaintiff.

January 27, 1947, Alexander Wade, Ida Wade (now Wesley) and Acy Wade, surviving widow of Clayton Wade, conveyed by warranty deed to defendant, Brewster.

July 3, 1947, the sheriff of McCurtain County executed his sheriff's deed unto Dora Wade and Alexander Wade, their heirs and assigns. As noted above, Dora Wade was then deceased.

On September 26, 1950, judgment, in the instant case, was rendered in favor of plaintiff and against the defendants quieting the title in plaintiff. The defendants, named as plaintiffs in error, appeal.

In the judgment the trial court made extended findings, determining the heirs of John Taylor, the original allottee of the land from which Lone Pine Addition was later platted, and the heirs of Ida Jones, and reciting the history of the foreclosure action. The court found that the statute of limitations had commenced to run from the date of the sheriff's sale in the foreclosure proceedings, and defendants were barred from asserting title to the property.

The trial court found that Octa Jones became the owner of the property by purchase from the heirs of Ida Jones and by inheritance and that she had paid taxes thereon from the time of her ownership. The court further found:

"The court further finds that the defendants, and each of them above named have never been in the possession of, have never collected or received any rents therefrom and have in no way exercised any control over the premises herein described.

"The court further finds that the plaintiff and his privies or grantors have been in adverse, actual notorious, unbroken continuous and exclusive possession of the above described property under exclusive ownership for the past 31 years; that the grantees of the plaintiff have built and placed valuable and lasting improvements on the said described property."

All of the above findings were sustained by the evidence, and this action was not commenced until 20 years after the recorded deed to Octa Jones.

■■ Adverse possession of real estate for the period of time prescribed by the statute ripens into title by prescription. Adverse possession may be either under claim of right or color of title. When an occupant of land is in possession thereof under a deed which purports to place the title in him, he is holding adversely under color of title. City Nat. Bank of Duncan v. Soderberg, 171 Okl. 369, 43 P.2d 495.

And we have held that under and by virtue of Tit. 42 O.S.1951 § 23, the grantee of a mortgagor may successfully institute and maintain an action to quiet title against a mortgagee not in possession of the mortgaged property, when the mortgage lien has

been extinguished by the lapse of time sufficient to bar an action upon the mortgage debt. Moore v. Kennedy, 196 Okl. 455, 165 P.2d 832.

It is said that continued possession by the landowner after a judicial sale is not adverse to the purchaser and that he is merely a tenant at sufferance of the purchaser and that therefore the statute would not begin to run until conclusion of the foreclosure proceedings. Nevertheless an adverse possession may be established by open and hostile acts of the owner asserting a title of his own.

We find the rule stated in 2 C.J.S., Adverse Possession, § 105, p. 659:

"The owner's continued possession after sale of the property at execution, judicial, or like sale is that of a tenant at sufferance of the purchaser, and is not hostile to the purchaser without a clear repudiation of his title and assertion of hostile claim, and in the absence of all testimony manifesting the actual character of his holding, his possession is regarded as consistent with the title of the purchaser.

"There is nothing in the relation of the parties to preclude the original owner from converting his amicable into a hostile possession, and the possession of the judgment debtor may be hostile to the purchaser under a judgment so as to ripen into adversary title where it is shown that the possessor has claimed title in himself openly and notoriously for the statutory period.

"The possession of the heirs of a purchaser's grantees, after sale on foreclosure of a vendor's lien, to which they or the grantee are not parties, has been held sufficient to start the running of limitations in their favor against the purchaser at such sale."

There was evidence to establish an adverse claim of title. The property was fenced and livestock of Octa Jones grazed thereon. Later a new fence was built. She filed of record deeds from the other heirs of Ida Jones which, to say the least, gave her a color of title. Octa Jones and her successors of title paid the taxes each and every year from the date of her deeds. Defendants did not attempt to exercise any control over the property until after this suit was filed. By that time lasting improvements had been placed upon the property and it had become valuable. Defendants did not cause the sheriff's deed to issue until after this suit was commenced, 20 years following the sheriff's sale.

It is argued that the statute of limitations did not begin to run until defendants' cause of action accrued and that defendants had no cause of action for possession of the lands until the sheriff's sale was confirmed and his deed issued. But the delays of 13 years in moving for confirmation and seven years in causing the issuance of the sheriff's deed were defendants' delays. And all such delays were in face of the actual notice of fencing and grazing of the land and constructive notice of the recordation of the deeds to Octa Jones and her payment of taxes on the land over which she was asserting an adverse ownership. The finding of the trial court that plaintiff and his privies or grantors had been in adverse, actual, notorious, unbroken, continuous and exclusive possession of the property for a period in excess of fifteen years is sustained by the evidence.

Affirmed.

HALLEY, V. C. J., and CORN, DAVISON, JOHNSON and O'NEAL, JJ., concur.

WELCH, J., dissents.

WELCH, Justice (dissenting).

The majority opinion affirms the trial court on the basis of the following statement in the opinion:

"The finding of the trial court that plaintiff and his privies or grantors had been in adverse, actual, notorious, unbroken, continuous and exclusive possession of the property for a period in excess of fifteen years is sustained by the evidence."

The finding of the trial court as quoted and approved in the majority opinion is as follows:

"The court further finds that the plaintiff and his privies or grantors have been in adverse, actual notorious, unbroken continuous and exclusive possession of the above described property under exclusive ownership for the past 31 years".

Now the case was tried and judgment rendered in the year 1950. Therefore the thirty-one-year period upon which the trial court judgment was based commenced in the year 1919. That was five years before the mortgage here involved was executed.

I observe the statutory limitation on actions herein involved, that is, Title 12 O.S.1951 § 93, Par. 4, which provides as follows:

"An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years."

And also Title 60 O.S.1951 § 333, which provides as follows:

"Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

In the body of the opinion I observe this statement:

"The court found that the statute of limitations had commenced to run from the date of the sheriff's sale in the foreclosure proceedings, and defendants were barred from asserting title to the property."

This statement in the opinion does not agree with the quoted findings of the trial court, but in any event, this statement in the opinion overlooks the fact that the sheriff's sale was not final and was not a complete sale until confirmation by the court. At the sheriff's auction of the land the highest bidder did not then receive any title to the land or any right to possession of the land or any right to a writ of assistance to be placed in the possession, nor did the bidder then acquire any cause of action against the occupants, the former owners of the land. That could only come to the bidder when and after his sale was confirmed, which was done in 1940. There was a long delay or lapse of time between the sheriff's auction of the land and the time the sale was confirmed and thereby became a complete sheriff's sale. All the parties knew about that delay, or they were charged with knowledge thereof, and the official court record gave legal notice to every one as to the pending situation. Therefore it was only in 1940 that the sheriff's sale purchasers could have acquired any interest or title or cause of action against the former owners of the land.

Note that in Oklahoma a sheriff's sale in mortgage foreclosure is a judicial sale. It must be both ordered and confirmed by the court. That is true generally as to all judicial sales. 12 O.S.1951 § 686 deals specifically with mortgage foreclosures, and in part reads as follows:

"No real estate shall be sold for the payment of any money or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale. The court may, in the order confirming a sale of land under order of sale on foreclosure or upon execution, award or order the issuance of a writ of assistance by the clerk of the court to the sheriff of the county where the land is situated, to place the purchaser in full possession of such land * * *."

This demonstrates there is no right to possession and of course no cause of action as to title or possession before confirmation. We have held, and quite recently, that such a sale is not complete until confirmation.

Near the beginning of the majority opinion there occurs this statement:

"Primarily the case must turn on the application of the fifteen year statute of limitations, Tit. 12 O.S.1951 § 93."

No one can find any fault with that statement, but it can have no application

here, as the majority opinion discloses that no cause of action whatever could have accrued until 1940, and the cited section of the statute discloses beyond question that no one of the five paragraphs thereof could possibly apply to this action, except No. 4 which fixes the period of fifteen years. Since no cause of action could arise until 1940, and this action was commenced in the year 1947, and was tried in 1950, no period of fifteen years had expired.

Fifteen years prescriptive title statute is 60 O.S.1951 § 333, supra, and of course it is that statute which was in the mind of the trial court when he based his decision on the occupancy of this land by the parties and their privies in whose favor he rendered judgment.

Many times this court has discussed the fifteen year statute of limitations and the fifteen year occupancy of adverse parties as barring an action and creating a prescriptive title, but this is the first time this court has made that application where less than ten years elapsed between the accrual of the cause of action and the time when it was asserted in court. Ten years delay or ten years adverse possession has never until now created a fifteen years prescriptive title.

Likewise, this case presents the first judgment ever rendered in this state based upon the legal premise that a mortgagor could hold adverse possession against the mortgagee, and that such adverse possession continued during the pendency of the action for foreclosure of the mortgage.

The majority opinion definitely implies, and I think it holds, that the mortgagor may hold adverse possession against the mortgage foreclosure purchaser on account of the fact that there was long delay in completing the latter stages of the foreclosure action; but no authorities are cited supporting that conclusion, and I have not been able to find any. We have had many long delays in court actions in this jurisdiction. Many of them have occurred in this court. A case might arise in which such delay would give rise to some right to relief under the principles of laches, but with all such delay in any case the action is legally pending and could not be made the basis of any bar of the statute of limitations as here applied.

Note the first paragraph of the syllabus of the majority opinion. It is a correct statement of a sound principle of law. However, it refers to a fifteen-year period and can have no application to this less than ten-year period from accrual of cause of action to the action itself.

Now note the second paragraph of the syllabus, note that it is made to apply to land mortgages generally, therefore to all mortgages whether matured or not. Many of the larger mortgages in Oklahoma run more than twenty years from execution to maturity date of the debt, therefore under the law *as stated in this syllabus,* the heirs of a mortgagor or their grantees might destroy the rights of the mortgagee by fifteen-year occupancy even before the mortgage debt came due. How can that be? On the contrary, is not this the correct rule: That when land is covered by a valid mortgage of record any person who thereafter acquires title to the land in any manner from the mortgagor, either by conveyance from the mortgagor or by inheritance from the mortgagor, or by conveyance from the heirs of the mortgagor, takes title subject to the mortgage and holds possession subject to, not adverse to, the mortgage rights?

Surely for that paragraph of the syllabus to be a true statement of the law it should be limited to apply to mortgages which had matured, that is, on which a cause of action had accrued. It should not be left wide open to apply generally to all mortgages whether matured or not.

That second paragraph of the syllabus cannot apply here because this is not an action against mortgagees at all. It is an action against purchasers from the purchasers at the mortgage foreclosure sale. True, in this case the original sheriff's sale purchasers were the same persons who had theretofore been mortgagees, but several years before this suit was commenced they had ceased to be mortgagees and had become sheriff's sale purchasers of the land itself, and had sold it to the defendant Brewster in this case. So why in this action should we pronounce a rule of law

for actions against mortgagees, and use that rule as one controlling this action? Here the original sheriff's sale purchasers were in the same position as would have been any stranger who bought at the sheriff's sale. After confirmation they were sheriff's sale purchasers and nothing else.

The record discloses the following statement in the trial court's written findings of fact and conclusions of law:

"I am of the opinion that the Statutes of Limitation began to run at the date of the sheriff's sale made by him in 1927 even though the sheriff's sale had not been confirmed at that time and even though they had no legal right to prosecute an action for the possession of the said lands by securing a Writ of Assistance or otherwise until said sale was confirmed in 1940."

"This being true, I conclude as a matter of law that the Statute of Limitation has run in favor of Joe C. Herron and that he is entitled to a decree quieting his title in and to said lands and real property hereinabove described."

Thus it is apparent that the trial court knew that no cause of action accrued to the high bidder at the sheriff's auction in 1927, and none could accrue until confirmation.

That finding and conclusion of the trial court seems from some language in the opinion to be the one that is affirmed, but it is a different finding that is quoted in the opinion as if to base this court's affirmance on that finding quoted in the majority opinion.

Now if the majority is resolute in its determination to affirm, should it affirm the trial court's conclusion (1) that the adverse possession and therefore the statute of limitations began to run thirty-one years before trial, or in 1919, according to the findings quoted in the majority opinion? Or (2) that the statute began to run when the sheriff made the sale in 1927, before confirmation, and before any foreclosure sale purchaser could have any cause of action?

It would be much better if the opinion would make it clear which trial court conclusion is affirmed, or when this opinion rules that the statute began to run in this case. That point is made vexatiously uncertain by the overall language of the opinion, and by the rule as stated in paragraph two of the syllabus.

I respectfully dissent.

WILLIAMS, Justice (dissenting).

For reasons set out below, I am unable to agree with the majority opinion herein. The facts are summarized in the majority opinion and need not be repeated here.

After hearing, the trial court found for plaintiff Herron on the ground that the statute of limitations barred any claim of Brewster and the Wades, and the court's conclusions of law included a finding to the effect that limitations began to run at the date of the Sheriff's sale in 1927, instead of the date of issuance of Sheriff's deed.

Only Brewster and the Wades have appealed. They argue in their brief, among other things, that the court erred in holding that the statute began to run at the time of the sale.

I believe this contention should be sustained. It is well settled, as general law, that a statute of limitations does not begin to run until a cause of action accrues; see Turk v. French, 202 Okl. 60, 210 P.2d 154, 156, wherein the court said:

"* * * the rule is that the statute of limitations does not begin to run until a cause of action accrues, and the test for determining when a cause of action arose is to ascertain when plaintiff first could have maintained an action successfully. Skelly Oil Co. v. Harrell, 192 Okl. 101, 134 P.2d 136; Big Four Foundry Co. v. Hagens, 197 Okl. 409, 172 P.2d 322."

The question in this case, then, is when the defendants (Brewster and the Wades) could first have brought suit on the cause of action set out in their cross-petition. This involves an examination of the question of what rights are acquired by a purchaser at a foreclosure sale, and when such rights accrue.

By strict doctrine of the common law, a mortgage was regarded as passing the whole legal title to the mortgagee, who also acquired the immediate right to possession of the land. See 59 C.J.S. Mortgages, § 1, at page 28. This harsh rule has, of course, been softened by the intervention of equity and the provisions of statute, and today in this state a mortgage is a lien merely, and conveys no title to the land involved. See Abraham v. Mike, 178 Okl. 597, 63 P.2d 743. Such being the case, the mortgagee does not own the legal title of the land, and has no right to take possession of it, till foreclosure proceedings are had as provided by statute.

Although I have not been able to find any case in which this court passed directly upon the exact question herein involved, the Kansas case of Zimmerman (Chambers, Intervenor) v. Rose, 111 Kan. 22, 206 P. 336, 337, is helpful. In considering the question of when title passes to a purchaser at a sheriff's sale and pursuant to a decree of foreclosure, the court said:

"In some states it is held that before the confirmation of a judicial sale the bidder is not a purchaser, but that after the confirmation the contract is complete. Virginia Fire, etc., Ins. Co. v. Cottrell, 85 Va. 857, 9 S.E. 132, 17 Am.St.Rep. 108. Undoubtedly this is true for certain purposes, because the bidder may be compelled by proceedings of the court to comply with his contract. But *obviously he is not the owner of the legal title until he has complied and the deed has been executed. * * ** (Emphasis supplied.)

"But while these rights and liabilities accrue on confirmation we think it is because the equitable title passes to the purchaser after confirmation and before the deed is executed.

" 'The property is held in trust for the purchaser between the time of sale and the time when the conveyance is made to him. Still, he does not obtain the legal title by such confirmation unless the decree divests and vests title, or a deed is made by the master or officer selling pursuant to a decree ordering him to do so, or unless on being so ordered, the master fails to make the deed within a reasonable time.' 16 R.C.L. 117."

In disposing of the case, the court said in syllabus 2:

" * * * title had not passed until the execution of the sheriff's deed."

In the California case of Leonard v. Flynn, 89 Cal. 535, 26 P. 1097, 1098, the question was whether a statute of limitations began to run at the time of sale or at the time of issuance of sheriff's deed. The court said in the body of the opinion:

"Plaintiff's grantor, as we have already seen, was not possessed of the legal title to this tract of land until he received the deed from the sheriff, May 28, 1888. He had no right to entry until that time, and it was only at that time that his cause of action accrued. * * * "

On this question, the Supreme Court of Utah said in Local Realty Co. v. Lindquist, 96 Utah 297, 85 P.2d 770, 773:

"To call it a lien, even under their practice is a somewhat loose designation and was made in connection with establishing the principle that title does not pass to the purchaser until execution and delivery of the deed. And such is the recognized rule now in practically all states. If the legal title had already passed there would be no necessity for a conveyance."

In 59 C.J.S., Mortgages, § 517, we find the following:

"Ordinarily a mortgage is regarded as completely foreclosed only when the equity of redemption has been cut off or the last step provided for in the process has been taken."

In the instant case, it can hardly be denied that a sheriff's deed is the "last step provided for in the process", insofar as title to the land involved is concerned.

I therefore believe that the purchasers at the sheriff's sale had no title of any kind till the confirmation of the sale in 1940, when the equitable title passed, and I further believe that the legal title did not pass till 1947, when the sheriff's deed was executed. It follows that their cause

of action was not barred by the 15-year statute of limitations pleaded.

Since defendants' cause of action as set out in their cross-petition was not barred by the statute of limitations, we must now determine whether plaintiff was entitled to the affirmative relief which the court granted him by way of quieting his title.

A reading of the findings of fact, conclusions of law, and journal entry of judgment herein reveal that the court's judgment in this regard was based upon the premise that plaintiff was entitled to judgment by reason of adverse possession by himself and his privies and grantors.

In this connection, it is noted that adverse possession does not begin to run against a person until he has a cause of action for the land involved. See 2 C.J.S., Adverse Possession, § 162, which reads in part as follows:

"The limitations period will not commence until claimant takes possession *and a cause of action therefor* accrues." (Emphasis supplied.)

The same principle was more succinctly stated in Superior Oil Corporation v. Alcorn, 242 Ky. 814, 47 S.W.2d 973, 985, as follows:

"Adverse possession never runs against a man unless he can stop it."

See also Ferguson v. Standley, 89 Mont. 489, 300 P. 245, to the following effect:

"Claim of adverse possession must invade owner's title and be so brought home to him that he is in position *to institute action for possession * * *.*" (Emphasis supplied.)

In Pacific Power & Light Co. v. Bailey, 160 Wash. 663, 295 P. 943, 944, the Supreme Court of Washington said:

"As said in McAuliff v. Parker, 10 Wash. 141, 38 P. 744, quoted with approval in Bowers v. Ledgerwood, 25 Wash. 14, 64 P. 936, 937: 'All the authorities hold that the question of adverse possession is a question of fact, and it must be a possession that is *known to the owner of the legal title.*'" (Emphasis supplied.)

As was demonstrated above, defendants herein certainly did not acquire equitable title to the land involved before the confirmation of the sheriff's sale in 1940, and they did not acquire the legal title till execution of the sheriff's deed in 1947. Such being the case, it can hardly be said that the 15 years required by our statute for a title by adverse possession has run, since it has been less than 15 years since defendants acquired title to the lands involved and the right to bring a cause of action for it.

Even granting for purposes of argument only that defendants did acquire some sort of title at the time of the sheriff's sale in 1927, there is another reason why plaintiff did not acquire title by adverse possession.

The doctrine of title by adverse possession is to be strictly construed; see Russell v. Davidson, 200 Okl. 408, 194 P.2d 887, 888, wherein the court said in part in syllabus 4:

"The party relying on a title by adverse possession has the burden of proving all the facts necessary to establish such a title. Adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner. * * *"

When a mortgagor remains in possession after a foreclosure sale, such possession is presumptively consistent with the title of the purchaser. See 2 C.J.S., Adverse Possession, § 105, which reads in part as follows:

"The owner's continued possession after sale of the property at execution, judicial, or like sale is that of a tenant at sufferance of the purchaser, and is not hostile to the purchaser without a clear repudiation of his title and assertion of hostile claim, and in the absence of all testimony manifesting the actual character of his holding, his possession is regarded as consistent with the title of the purchaser."

See also Chalfin v. Malone, 48 Ky. (9 B. Mon.) 496, 50 Am.Dec. 525, wherein the court said:

"The possession of the defendant in the execution is regarded, in the absence of all testimony manifesting the

actual character of his holding, as consistent with the title of purchaser."

In Jones v. Lickliter, 154 Ky. 848, 159 S.W. 652, it was said in syllabus one:

"Where a grantee remained in possession after the land was sold by the administrator of his grantor to satisfy a purchase-money note, his possession was not hostile to the purchaser at the judicial sale."

To the same general effect is 1 Am.Jur., Adverse Possession, section 37.

A careful examination of the record herein discloses only three things that could possibly be termed a "clear repudiation of his title and assertion of hostile claim". They are: Possession by Octa Jones and her grantees; payment of taxes by Octa Jones; and the building of a fence by Octa Jones in 1943. As shown above, the possession by Octa Jones is presumptively consistent with the title of the purchasers at the foreclosure sale; it alone was therefore insufficient to give notice of adverse possession. As noted above, the fence was not built till 1943, and even if such act constituted a "clear repudiation" of defendants' title (which is debatable) we need consider it no further for the reason that 15 years has not elapsed since the fence was built. With regard to the payment of taxes on land which is claimed by adverse possession, such payment is not alone controlling. See Anderson v. Francis, 177 Okl. 47, 57 P.2d 619. It is axiomatic that, under given circumstances, taxes against the land must be paid regardless of who the owner is; for that reason, payment of taxes is not necessarily an act constituting a hostile claim of title.

Under all the facts and circumstances in this case, I do not believe that any of the acts upon which the claim of adverse possession is based are necessarily incompatible with the possession and use of land by a tenant at sufferance. For that reason, no "clear repudiation" or "hostile claim" of title was shown, and plaintiff theretofore was not holding adversely to defendants.

In his brief, plaintiff argues that defendants are estopped to assert title to the lands involved for the reason that valuable improvements were placed thereon, with the knowledge and acquiescence of defendants. A careful reading of the pleadings herein reveals that the defense of estoppel was not pleaded. It is well settled that the defense of estoppel, to be available, must be affirmatively pleaded. See State ex rel. Oklahoma Employment Security Commission v. Dean, 199 Okl. 593, 188 P.2d 355.

There is also some argument in the briefs as to whether or not a revivor of judgment should have been had after the death of Ida Jones. By the terms of 58 O.S.1951 § 346, no such revivor was required. See Ray v. Elson, 190 Okl. 245, 123 P.2d 245, wherein this court said:

"In an action to foreclose a real estate mortgage where one of the judgment debtors died after the entry of final judgment and decree of foreclosure, a valid order of sale may be issued without making the heirs and representatives of said deceased defendant parties to said judgment as provided by Section 589, O.S.1931, 12 Okl.St. Ann. § 1077."

Cited by the majority is the case of City National Bank of Duncan v. Soderberg, 171 Okl. 369, 43 P.2d 495, 498, for the proposition that "When an occupant of land is in possession thereof under a deed which purports to place the title in him, he is holding adversely under color of title". The essential facts in that case are indicated by a reading of the court's first syllabus, to-wit:

"Where grantee in a warranty deed taken in 1902 conveying an 18-inch strip of land off an adjoining lot fails to record same until 1906, and in the meantime a second grantee takes a warranty deed to such adjoining lot without excluding such 18-inch strip and records the same in 1905, and where the first grantee entered into possession of said 18-inch strip and held the same openly, notoriously, and adversely for 19 years, and there was privity between successive occupants since 1902 holding adversely to the title holders continuously, held, that

successive periods of occupation may be united to each other to make up the 15 years of adverse holding prescribed by section 99, O.S.1931, as against such title holders."

It is to be noted that that case, for the purpose referred to by the majority, has not the slightest application to the case at bar, there being no question of mortgagor-mortgagee relationship involved therein. It does, however, remind us of the privity existing between Ida Jones and her children which, after her death, moved them into her shoes as owners of the title of the land, subject to the lien of the mortgage, now fortified by foreclosure judgment, the Wades being as of then owners and holders only of that lien.

A statute cited in the majority opinion, 42 O.S.1951 section 23, reads: "A lien is extinguished by the mere lapse of the time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation." The majority says, "And we have held that under and by virtue of" that statute "the grantee of a mortgagor may successfully institute and maintain an action to quiet title against a mortgagee not in possession of the mortgaged property, when the mortgage lien has been extinguished by the lapse of time sufficient to bar an action upon the mortgage debt", and cites Moore v. Kennedy, 196 Okl. 455, 165 P.2d 282. In the latter case no action had been brought nor payments made and the statute had run, a situation squarely within the above statute. Neither the statute, the case nor the principle are remotely involved here, for the simple reason that the Wades had not only sued but had obtained a foreclosure judgment prior to the death of Ida Jones and the deeding of the land by her other children to her daughter, Octa Jones.

The majority opinion cites and appears to lean heavily upon a quite correctly quoted but equally inapplicable portion of a statement from 2 C.J.S., Adverse Possession, § 105, P. 659, which reads: "The possession of the heirs of a purchaser's grantees, after sale on foreclosure of a vendor's lien, to which they or the grantee are not parties, has been held sufficient to start the running of limitations in their favor against the purchaser at such sale." In the foreclosure referred to in this case, Ida Jones was joined as a party defendant, and under the law of lis pendens her heirs could neither take nor convey more than they received. That statement is of no comfort to plaintiff Herron as I view it.

The majority speaks of the Wades' delay of 13 years in moving for confirmation and seven years in causing issuance of sheriff's deed. In 54 C.J.S., § 52, p. 625, under the title "Lis Pendens", subhead, "V. Rights and Liabilities of Persons Acquiring Interest", it is said, "It has been held that a purchaser pendente lite from a party to a suit takes all of such party's interest. It has further been held that a purchaser or encumbrancer pendente lite does not acquire any greater rights than his transferor had * * *", and 54 C.J.S., Lis Pendens, § 52 at page 626, "it has also been held that the lis pendens purchaser has no special standing in equity to complain of laches on the part of plaintiffs", citing Hudson v. Herman, 81 Kan. 627, 107 P. 35.

The majority opinion refers more or less indirectly to plaintiff's defenses to the Wades' cross-petition of champerty and estoppel. Neither were pleaded.

The sheriff's deed recites that the sale was had without appraisement. If so, the sale could not have been legally conducted within 6 months of the date of the judgment, which had, however, directed sale with appraisement. (The appearance docket reflects the filing of appraisement but same does not appear in the record.) I submit that the trial court's judgment should be reversed, sale vacated and plaintiff Herron permitted to pay the judgment or a new sale be had.

I respectfully dissent.