[No. 11782. Department One. January 7, 1915.]

## CATHERINE A. SNELL, *Appellant*, v. H. JACOB STELLING et al., *Respondents*.[1]

STIPULATIONS—OPERATION AND EFFECT—ACTIONS—ISSUES—BOUND- ARIES. In an action of ejectment and to quiet title, a stipulation set- ting forth two deeds, with descriptions of the disputed boundary line, by courses and distances, and reciting that by mesne conveyances, the plaintiffs had succeeded to the right and title conveyed by one of the deeds, and the defendants the other, eliminates the claims of all title by adverse possession by either side to the lands described in the deeds, and reduces the action to one in its essence to restore a lost boundary as contemplated in Rem. & Bal. Code, §§ 947-949.

ADVERSE POSSESSION — DISPUTED BOUNDARY — MISTAKE. Where neither of two adjoining landowners intends to claim beyond the true boundary line set out in their deeds, possession by mistake to an erroneous line does not work a disseisin as against the other under the seven-year statute, Rem. & Bal. Code, §§ 786, 788, by pos- session under color of title and payment of taxes.

BOUNDARIES—LOST LINES—ESTABLISHMENT—ACTIONS — SURVEY— PAROL EVIDENCE. Where two deeds, executed at the same time, de- scribe the dividing boundary line between the tracts conveyed by courses and distances, and there is no defect or patent or latent am- biguity in either description intimating that the lines would not coincide, if completed surveys were made, in an action reduced in its essence to restore the lost boundary, it is error to attempt to establish the location of the boundary line by oral evidence until after commissioners have been appointed under Rem. & Bal. Code, § 948, to make a survey and plat to restore the lost boundary, if it can be done; oral evidence being admissible only after it is found that, by a complete survey, the two descriptions of the boundary in dispute do not coincide.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered August 8, 1913, in favor of

[1]Reported in 145 Pac. 466.

the defendants, after a trial on the merits before the court without a jury, in an action of ejectment and to quiet title. Reversed.

*Chapman & Bailey* and *B. F. Jacobs (W. H. Snell,* of counsel), for appellant.

*Blackburn & Gielens,* for respondents.

ELLIS, J.—The plaintiff brought this action to eject the defendants from, and to quiet title to, a narrow strip of land which she claims as a part of her property, and especially to enjoin the defendants from interfering with her use of a spring located upon the disputed strip. As a first cause of action, she claims title by deed from prior owners, dated December 1, 1899, conveying a certain tract of land described by metes and bounds as in the first description in the stipulation to which we shall presently refer; avers that the north boundary of this tract ran along a rail and brush fence about 40 feet north of the spring; that in September, 1904, by pipes, she connected this spring with a water system installed upon her farm, and has since used the water for domestic and farm purposes; that about December 1, 1912, the defendants entered upon the land and erected a fence 80 feet south of the north boundary line thereof, cutting the plaintiff off from the spring, threatening to disconnect the pipes, and claiming title to the strip so fenced off. For a second cause of action, it is alleged that, about December, 1899, the plaintiff appropriated the waters of the spring for the watering of her stock, and in September, 1904, permanently appropriated the water by means of pipes, and claims title by adverse possession and payment of taxes each year for more than seven years last past "upon said property."

The defendants, by answer, denied that the plaintiff is, or ever was, the owner of or in possession of any part of a certain tract of land which is described by metes and bounds substantially as the second description in the stipulation

hereinafter set out. Practically all of the allegations of the complaint are denied, save that the defendants admit that they erected the wire fence and claim that it is on the true boundary line between the two tracts. It is then averred by way of cross-complaint that a certain tract of land, described as in the second description in the stipulation referred to, was conveyed by one Darius M. Ross and wife on April 21, 1888, to one Elbridge Bartlett, and through mesne conveyances and by deed dated March 21, 1908, conveyed to the defendants; that the land so conveyed is the same land described in their answer; that the spring in controversy is located upon their land so described at a point about twenty feet north of its south boundary; that they and their predecessors in interest have been the owners thereof, and in actual open and uninterrupted possession thereof, and claiming adversely under color of title for more than ten years, and have paid all the taxes on the land so described. It is also averred that the plaintiff, on December 6, 1899, took an assignment of a certain mortgage upon the lands now belonging to the defendants, and by written release satisfied the same in October, 1901, and is thereby estopped to claim title to any part of the land so described. The defendants pray that title to the land upon which the spring is located be quieted in them. The reply puts in issue the affirmative allegations of the cross-complaint.

The trial was to the court without a jury. Immediately after entering upon the trial, the plaintiff offered in evidence a written stipulation to which we have referred. It was received without objection. Omitting caption, it reads:

"It is stipulated by and between the parties hereto, as follows:

"(1)   That on and prior to the 21st day of April, 1888, Darius M. Ross and Eliza J. Ross, his wife, were the owners of and in the possession of all of the property hereinafter described, a part of which is now in dispute between the parties in this action.

"(2)   That on said day said Darius M. Ross and wife made, executed and delivered a deed to a part of the property by them owned as aforesaid to Albert S. Ross. The property conveyed to said Albert S. Ross, being described in said deed as follows:

"Beginning at the quarter section corner on the east side of section 30, township 20, N. R. 4 E. of W. M., thence north 88° 15′ west var. 22° E. along center line east and west of section 30, 60 chains to the west 1-16 line of the section, thence north var. 22° east 6 chains and 50 links to a stake, thence south 88° 15′ east 33 chains and 40 links to a stake, thence north 56° east 36 chains and 44 links to the left bank of Clark's creek, thence with the meander of the left bank of Clark's creek, and extending to the center of Clark's creek.

"South 35° East 0.93 chs.

"South 49° East 3.28 chs.

"South 77° East 3.00 chs.

"North 89° East 2.70 chs.

thence south 42° 30′ east 3.24 to a stake on the left bank of Clark's creek, thence south 35° west 26 chains and 1 link to the place of beginning, containing 84 acres more or less. Which deed was recorded on the 23rd day of April, 1888, in book 30 of deeds at page 57 of the deed records of Pierce county.

"(3)   That on said 21st day of April, 1888, said Darius M. Ross and wife made, executed and delivered a deed to a part of the property by them then owned as herein set forth to Eldridge Bartlett, also known as Elbridge Bartlett; the property in said deed to Eldridge Bartlett being described as follows:

"Beginning at the intersection of the west 1-16 line of section thirty (30) township twenty (20) north of range four (4) east of the Willamette Meridian with the boundary line on the south side of the Puyallup Indian Reservation which is a government corner, properly witnessed thence north seventy degrees (70°) east var. 22° east along said reservation line sixty-three chains and seven links (63.07 chs.) to the intersection of the east line of section thirty (30) with the Indian Reservation line, thence south 3.30 chains to the left bank of Clark's creek, south 47° 45′ east 3.87 chains, south 17° east 1.74 chains, south 35° east 1.66 chains to a stake on the left bank of Clark's creek, thence south fifty-six de-

grees west thirty-six chains and forty-four links to a stake, thence north eighty-eight degrees and fifteen minutes (88° 15′) west thirty-three chains and forty links (33.40 chs.) to stake on the west 1-16 line of section thirty (30) thence north six chains and forty links (6.40) to the place of beginning, and containing eighty-four (84) acres more or less. Which deed was recorded May 15, 1889, in book 36 of deeds at page 375 of the deed records of Pierce county, Washington.

"That by virtue of mesne conveyances and proceedings the plaintiff herein has succeeded to the right and title of said Albert S. Ross in the land so conveyed to him, and the defendants herein have succeeded to the right and title of said Eldridge Bartlett in the land conveyed to him as herein set forth.        B. F. Jacobs—Chapman & Bailey,
                    "Attorneys for Plaintiff.
          "Blackburn & Gielens,
              "Attorneys for Defendants."

The evidence is voluminous. We can give only its purport. We here reproduce a plat of the lands drawn by one Wheeler, who made a partial survey with a view to determining the dividing line between the two tracts in December, 1901. This bare outline was all that was offered in evidence of this Wheeler survey. No field notes were produced. Wheeler is now dead. The plat is reproduced merely to illustrate the evidence.

The plaintiff's husband testified that this Wheeler survey placed the spring on the plaintiff's land. The plat itself, however, is silent on the subject. This survey is of little probative value; no distances are marked, nothing to show the starting point nor how the various corners, lines and angles were located.

In 1903, the plaintiff procured a partial survey of the dividing line between the two tracts by one Funk, then county surveyor. The plat of this survey, which is in evidence, places the spring about twenty-three feet south of the dividing line and on the appellant's land. Funk testified that he ran this line from the plaintiff's deed. There is no evidence that he ran all the lines in that deed or attempted to locate all the corners and monuments. The other parts of the plat were drawn by mere computation. He began at the east quarter corner of section 30, ran thence west along the east and west center line of the section to what he computed to be the west 16th corner of that section on that line, ran thence north 6.5 chains or 429 feet, thence east, parallel with the east and west center line of the section, 33.4 chains, the distance of the 3d call in the deed. There is no evidence that from there on he ran any of the other lines.

In October, 1912, the plaintiff had a third partial survey made by one Webb. This line like the other was a survey only to establish the west part of the dividing line according to the third call of the plaintiff's deed. It was made in the same way as the Funk survey. Webb testified that this line runs 15.1 feet north of the spring, thus disagreeing by something over eight feet from the location of the spring with reference to the line as shown upon Funk's plat. Webb testified that, by reversing the calls in the defendant's stipulated deed, that is, running the last call first, the west part of the dividing line which he surveyed would almost coincide with his survey. He states, however, that he did not survey the east part of the tract, nor attempt to locate the intersection of

the dividing line with Clark's creek according to the calls in either deed.

In November, 1912, the defendants had the dividing lines between the two tracts surveyed by one Nicholson. The lines were actually run by Joseph Bell, a man in Nicholson's employ, but were checked up by Nicholson from Bell's field notes. Both Bell and Nicholson testified that they began at the east quarter corner of section 30, ran thence north to the intersection of the east line of section 30, with the southerly line of the Puyallup Indian Reservation for a point of beginning. Thence following the calls in the defendants' deed from that point, they located the point on the left bank of Clark's creek, called for in the defendants' deed as the beginning of the dividing line; thence following the courses and distances in the defendants' deed, ran a line in a southwesterly direction to the brow of the hill; thence, following the calls and distances in the deed, ran the line west to what they claim is the west 16th line of section 30. This line so found, although parallel with the east and west center line of section 30, is several feet south of the line as located by Funk and Webb, and extends a few feet beyond the west 16th line of section 30 as located by Funk and Webb. The spring is about twenty feet north of this line.

From their computations, but not by actual survey, both Nicholson and Bell testified that the dividing line if run completely according to the calls and distances of the plaintiff's deed, continuing from the point where the Webb survey actually ended, diagonally across the bottom land for the distances called for in the deed, would extend the line several feet across Clark's creek. So far as the evidence of these various surveys goes, it tends to establish the fact that neither the description in the stipulated deed of the plaintiff nor the description in the stipulated deed of the defendants would close when actually surveyed upon the ground, and that the division lines as described in the two deeds do not coincide.

There was evidence of a survey prior to any of these. That survey was made by one Miller in the spring of 1888, and was for the purpose of dividing the entire tract, including the lands claimed by both parties, between Albert S. Ross and Elbridge Bartlett, the grantees mentioned in the stipulation, under the following circumstances: Darius M. Ross owned all of the land. Albert S. Ross, his son, and Eldridge Bartlett, his son-in-law, had purchased the land from him. They desired to divide it as nearly as possible equally, yet so that each would have one-half of the more valuable bottom land. Three arbitrators, selected in the usual manner, made the division with the assistance of the surveyor Miller. The result was the two descriptions in the deeds to Albert S. Ross and Elbridge Bartlett substantially as set out in the above stipulation. Miller, however, made no plat nor, so far as the record shows, were his field notes preserved otherwise than as recited in the two deeds. He was not produced as a witness.

One of the arbitrators, Frank R. Spinning, and Albert S. Ross and his brother Charles H. Ross, both of whom assisted in the survey, testified that this survey and division, as marked upon the ground at the time, placed the dividing line between the two tracts south of the spring in dispute so that the spring fell upon the Bartlett tract. All of these witnesses claim to remember that fact because Albert S. Ross was particularly desirous of getting the spring, but did not get it. They all testified that the arbitrators selected as a starting point for the dividing line a point on the left bank of Clark's creek where a stake was set. For convenience of illustration, we have marked this point "A" on the plat. Thence they ran the line in a southwesterly course to the brow of the hill, so as to divide the valuable bottom land as nearly as possible equally. At the point reached by this course on the brow of the hill, a stake was set, this point we have marked "B." The dividing line was run thence west in a straight line to the western boundary of the entire tract. The Ross brothers

testified that this line was marked on the ground at the time by blazing the trees. There were slight evidences of this blazed line at the time of the trial. There was clear evidence, however, that, shortly after the division, Albert S. Ross and Eldridge Bartlett built a fence, along what they both conceded to be their dividing line, from the stake on the left bank of Clark's creek to the point on the brow of the hill where the line turned west. At the time of trial, there were seven or eight panels of old post and rail fence running west from the end of the old diagonal fence. There were distinct evidences of both of these old fences on the ground at the time of the trial. There were slight evidences of an old brush fence extending a little distance further west in an irregular line. If extended in its general direction it would pass to the south of the spring. The court, evidently conceiving that the conflicting surveys demonstrated the ambiguity of the two deeds when applied to their subject-matter, so as to admit of extrinsic evidence, took the angle where the old fence across the bottom land met the seven panels of post and rail fence as the point on the hill to which the call from the stake on Clark's creek was intended in the original division to run, and thence ran the line west to the west boundary of the two tracts. This line ran between the Webb and Nicholson lines, but placed the spring in controversy on the respondents' land. The decree went accordingly, save that, it appearing that the plaintiff in 1901 had built a new fence five feet north of the line of the old fence diagonally across the bottom land, she was accorded that five-foot strip. The plaintiff appealed.

We shall not attempt a discussion of the various claims of error assigned, since they resolve themselves into the single claim that the trial court should have established the line of the Webb and Funk survey as the dividing line, and that parol evidence was inadmissible to establish the location of the line on the ground at the time of the original division between Ross and Bartlett. Some of the questions, elaborately discussed, are eliminated by the stipulation which we have set

out. This stipulation, deliberately entered into at the outset, narrows the issues presented by the pleadings by eliminating all claim of title on either side, save that taken by Albert S. Ross on the one hand and by Bartlett on the other by their respective stipulated title deeds. It eliminates the plaintiff's claims of title by adverse possession with payment of taxes under the seven-year statute, Rem. & Bal. Code, §§ 786, 788 (P. C. 81 §§ 1373, 1377), because it limits her color of title to the description in her title deed, and limits her entire claim of title, rightful possession and payment of taxes to that land. *Johnson v. Ingram*, 63 Wash. 554, 115 Pac. 1073. It is not pretended that she has paid taxes by any other description than that included in her title deed.

On the other hand, it limits the defendants' claims of title in the same way, since by this stipulation they claim rightful possession of no more than is included in the description in the stipulation as the Bartlett land.

"Where neither party intends to claim beyond the true line, possession, up to what is erroneously supposed to be the true dividing line between adjoining proprietors, will not work a disseisin in favor of either of any land occupied by him under such erroneous belief." 2 Devlin, Deeds (2d ed.), p. 1457, § 1037.

See, also, *Milbank v. Rowland*, 63 Wash. 519, 115 Pac. 1053; *Edwards v. Fleming*, 83 Kan. 653, 112 Pac. 836, 33 L. R. A. (N. S.) 903.

It is true that possession originating in a mistake may become adverse. That, however, is a question of fact. There must be some evidence of a hostile intent and facts imposing notice of that intent to initiate an adverse holding. *Johnson v. Ingram, supra; Bowers v. Ledgerwood*, 25 Wash. 14, 64 Pac. 936. There is no such evidence in this case.

We are clear that this narrowing of the issues is the inevitable effect of this stipulation and that the whole dispute must be solved by the application of these two descriptions to the ground itself, if by a complete survey according to the

calls, monuments and distances in each stipulated description they can be made to enclose the respective tracts so that the north line of the one shall coincide with the south line of the other. If this can be done, this dividing line, wherever it falls is, by this stipulation, conceded to be the correct dividing line, and the right and title to the waters of the spring must be adjudged accordingly. If this cannot be done, but only then, parol evidence would be admissible to determine where the dividing line was intended to be, and where it was actually placed upon the ground and acquiesced in by Ross and Bartlett when the division was made. Had there been clear evidence that the descriptions cannot by actual survey be so applied to the land as to fix the dividing line, we would deem the parol evidence sufficient to establish this line where the trial court placed it. The parties have, in effect, stipulated that the plaintiff stands in the shoes of Albert S. Ross and can claim nothing more than Ross could claim against Bartlett, and that the defendants stand in the shoes of Bartlett and can claim nothing more than Bartlett could have claimed against Ross. The last paragraph of the stipulation makes this plain. The fact that the deed to Albert S. Ross was first recorded is, therefore, immaterial. Both deeds were of record when the parties here acquired their respective lands. The deeds were executed on the same day under circumstances showing a clear intention of all concerned that they should be simultaneously delivered. In short, this stipulation reduces the action to one in its essence to restore a lost or uncertain boundary, as contemplated by the statute touching such cases. Rem. & Bal. Code, ch. 8, §§ 947, 948, 949 (P. C. 57 §§ 1, 3, 5).

It is obvious that parol testimony should be inadmissible to establish this common boundary line unless there is some defect or ambiguity in one or both of the stipulated descriptions. . There is no patent ambiguity appearing upon the face of either description, nor do we believe that it can be fairly said that the partial surveys in evidence demonstrate

with any degree of certainty that there is a latent defect or ambiguity in either description when laid upon the ground. So far as the record shows, no survey since the Miller survey, made for the purpose of dividing the land, was a complete survey running all of the boundaries of both or either tract according to the monuments, calls, courses and distances included in both or either description. Since the action has been reduced in its essence to one to restore a lost or uncertain boundary, we think the case is one peculiarly calling for the appointment of disinterested commissioners to make a complete survey of both tracts upon the ground with a view to establishing the common boundary between the two tracts, if it can be done by a survey following the descriptions, and in any event returning to the court a plat of their survey with their field notes together with their report. The discretion to appoint commissioners for that purpose is clearly given by the statute, Rem. & Bal. Code, § 948, and we think, under the state of the record now before us, that had such an application been made by either party in the court below, a refusal to follow that course would have been an abuse of the discretion.

We are therefore of the opinion that the decree should be vacated, and the cause remanded with directions to the trial court to open the case for further evidence, appoint three commissioners, as provided in the above mentioned statute, for the purpose of surveying the land and, upon their return of such survey, to take their testimony and consider the same in connection with all of the testimony touching the several surveys admitted at the former trial. If from this testimony the court is satisfied that the two stipulated descriptions by an actual complete survey cannot be harmonized so that the south line of the one will coincide with the north line of the other, he shall then consider the parol testimony relative to the original establishment of the line upon the ground and the acquiescence of Ross and Bartlett therein

as properly admitted, and upon the whole record so supplemented make his decree.

We deem it proper to state that since neither party is seeking a reversal of this decree in so far as it establishes the present fence of the appellant across the bottom land as a boundary line, to that extent the line may be considered as agreed to, but, of course, not for the purpose of locating the remainder of the dividing line running thence west.

The decree is reversed, and the cause is remanded for further proceedings in accordance with this opinion. Neither party will recover costs on this appeal.

CROW, C. J., CHADWICK, GOSE, and MAIN, JJ., concur.