[No. 23232. Department One. October 29, 1931.]

ANTON LINDBERG et al., Respondents, v. BERT DAVIS et al., Appellants.[1]

[1]Reported in 4 P. (2d) 501.

*Welsh & Welsh,* for appellants.

*Chas. R. Lewis* and *Revelle, Revelle & Kells,* for respondents.

MITCHELL, J.—John Matson and wife owned lots 3 and 4, section 20, township 23 north, range 3 W. W. M., situated on Hood canal in Mason county, Washington. About the year 1900, they sold lot 4 to one Carl Erneberg, and about two years later sold what is described as the southwesterly half of lot 3 in the same section to one Anton Lindberg. The north line of lot 4 is the south line of the tract sold to Lindberg. Lindberg settled on his tract shortly after buying it, and has made it his home at all times since, having lately sold some interest in it to his co-plaintiffs Huff and wife. Erneberg sold lot 4 to E. E. Lively in 1912. Lively died in 1917, the property going to his widow, who sold it to defendants Bert Davis and wife shortly before the commencement of this action.

When Matson and wife sold the two lots, the boundary lines were not known. That section of the country was sparsely settled, having no highway other than Hood canal. Lindberg's occupancy of his tract has been continuous, while for much of the time no one lived on lot 4.

In 1929, Bert Davis and his wife, strangers in that community, it appears, purchased and took possession of lot 4, and a few days thereafter commenced to make permanent improvements north of the true boundary line between lots 3 and 4, believing, it appears, that they were within the boundary of their lot 4. The demand of Lindberg, Huff and wife, that Davis and his wife cease their trespass upon and occupancy of a part

of lot 3 being refused, this suit was brought December 6, 1929, against Davis and wife to recover possession, quiet title to the plaintiffs' property to the true boundary line between the lots, and for damages. The defense of the action was that the plaintiffs did not own that portion of land the defendants were improving, and that the defendants had acquired the same by adverse possession. Plaintiffs by their reply denied the claim of title by adverse possession. Upon the trial, findings of fact, conclusions of law and judgment were entered against the defendants, who have appealed.

About the time the action was commenced, the respondents had a survey made of the boundary line between the two tracts, which survey admittedly is correct, and was so decided by the trial court, and which shows that the true boundary between the tracts is an appreciable distance south of the point at which appellants were making improvements. The main contention of appellants on appeal is that, although the improvements they were making were located north of the true boundary line between the tracts, the improvements were within an area that they and their predecessors had acquired by adverse possession. The evidence, in our opinion, is to the contrary. From the commencement, the owners of the respective tracts of land, having no definite knowledge of the true boundary between them, lived in a friendly, neighborly way with respect to it, as is often usual among first settlers in a community.

Prior to 1912, nothing of a tangible kind occurred having any bearing upon the main question in this case, other than possibly the building by Lindberg of some irregular fencing made of wire and pickets erected principally for a chicken coop entirely within his own boundaries, and which, under all the evidence, clearly was never intended as a boundary line fence.

A year or more after Lively and his wife bought lot 4 in 1912, they lived on it until he died in 1917. During those years they, as well as Lindberg, made improvements by way of clearing and cultivating land along what was supposed to be the approximate line between their respective tracts with the permission, each of the other, and with the often repeated understanding that, as soon as they could raise or save sufficient money, they would have the line between them surveyed. Lively died, and after the property was distributed in probate proceedings to the widow in 1919, she moved to California, and thereafter much of the time had a real estate agent in this state looking after the sale of her property.

She and Lindberg were continuously planning on having their boundary line surveyed, as indicated by letters in evidence, both prior to and after she went to California, and by the testimony of a surveyor that Mrs. Lively gave him two dollars in 1919 to procure United States field notes for the purpose of having a survey made, and then went no further with it. In 1923, Mrs. Lively's real estate agent on her behalf wrote to Lindberg, asking if he would pay one-half the expenses of a survey of the line between them, and as late as November 5, 1927, two years before this suit was brought, Mrs. Lively wrote to Mr. Lindberg saying:

"I have about decided to have my place surveyed and am wondering if you would pay your share of the line between your place and mine. Have there been any surveyors doing any work there this summer? And if so where have they been surveying. . . . Did you have your place surveyed? Who would be a reasonable man to get to do the work? . . ."

The trial court found:

"That the fence described in the affirmative defense of the defendants' answer as a boundary line fence

between Lot 4, Section 20, Township 23 North, Range 3 West, W. M., and the said Lot 3, was never agreed to or established as a boundary line fence between the said lots, and the said fence does not run east and west and is not straight, but varies to a marked degree in its direction at different places, and the said fence only extends a comparatively short distance upon the said property and is wholly upon the said Lot 3, and neither the defendants nor their predecessors in interest have held adversely the land south of the said fence, claiming the same to be the true boundary line between Lots 3 and 4.''

The finding is supported by a clear preponderance of the evidence. Between the respective owners of these lots from time to time, there was no hostile intent with respect to the use of the land, according to the evidence, until appellants purchased lot 4 shortly before this action was commenced.

The rule applicable to the case is stated in *Snell v. Stelling*, 83 Wash. 248, 145 Pac. 466, quoting from Devlin on Deeds, as follows:

''Where neither party intends to claim beyond the true line, possession, up to what is erroneously supposed to be the true dividing line between adjoining proprietors, will not work a disseisin in favor of either of any land occupied by him under such erroneous belief.'' 2 Devlin, Deeds (2d ed.), p. 1457, § 1037.

Errors are assigned upon the admission of certain testimony and also the exclusion of testimony, both over the objections of the appellants. Particulars need not be given; together they are not materially important because, had the rulings been otherwise, the final result would not have been different.

Affirmed.

Tolman, C. J., Parker, Beeler, and Millard, JJ., concur.