[No. 32250. Department One. July 15, 1953.]

GEORGE W. BROWN *et al.*, *Appellants*, v. CLARENCE M. HUBBARD *et al.*, *Respondents*.[1]

*Cooney & Miller*, for appellants.

*Cornelius E Collier*, for respondents.

WEAVER, J.—This is an action to establish title by adverse possession to a strip of land eight and one-half feet wide. The strip is the north eight and one-half feet of the property deeded to defendants, and is adjacent to, and immediately south of, plaintiffs' platted tract. Plaintiffs appeal from a judgment dismissing their action.

[1]Reported in 259 P. (2d) 391.

Appellants' predecessors in ownership, Mr. and Mrs. Indahl, built a house upon their property. Exhibits in evidence show a driveway from west to east, going back to a garage. The garage abuts the south line of the property as deeded. In 1932 or 1934, the Indahls attempted to define the south line of their property by planting bushes (sometimes designated as a "hedge" in the record) for about two hundred feet. The line of the bushes was continued for a short distance by a fence of a rabbit or chicken pen. From the end of the fence to the east side of the property, rocks, which had been gathered in clearing the properties, were piled haphazardly. All these were approximately eight and one-half feet south of the true line and were upon the property then owned by Mr. and Mrs. Stone, respondents' predecessors in ownership.

Appellants purchased the north tract from the Indahls in 1939. Respondents purchased the south tract from the Stones in 1942. The Stones retained property south of the land which they sold to respondents.

In 1942, the Stones had the property surveyed in order to determine the north line of the property retained by them. A stake was placed at the northwest corner of the tract deeded to respondents. Appellants did not learn of the survey or stake until sometime between 1946 and 1949, when it was pointed out to them by a Mr. Frost, who had previously farmed both tracts of land. Subsequently, respondents inquired of appellants the location of the true corner. Appellants pointed it out to them. This was the first time that both parties knew the exact location of the true line.

In 1951, when a basement excavation was made into a section of the hedge, appellants posted "no trespassing" signs on the strip and commenced this action to quiet title to it.

It is clear from the record that the line of the bushes, fence, and rocks was established by inadvertence, based upon the mistaken belief that it was being placed upon the true line. Mrs. Indahl, who had planted the hedge testified:

"Q. And you didn't at any time when you were beautifying this property intend to encroach upon your neighbor, Mrs. Stone, in any way, did you? A. No. I wouldn't take her property, had I known it. Q. You had no intention of taking any part of her property? A. Oh, no. Q. And you were not claiming any part of her property? A. No."

To establish title by adverse possession, appellants had to prove that their possession was actual and uninterrupted, open and notorious, hostile and exclusive, under a claim of right made in good faith for the statutory period. *Skoog v. Seymour*, 29 Wn. (2d) 355, 187 P. (2d) 304 (1947).

This court said in *Young v. Newbro*, 32 Wn. (2d) 141, 143, 200 P. (2d) 975 (1948):

"The mere possession of land beyond the real boundary line is not sufficient to make such holding adverse. There must be, in addition to that, *an intention* to claim title to the disputed area and to hold as the owner." (Italics ours.)

The "intention" of which the cases speak is in reality an element of "hostile" possession and of the "claim of right" necessary to establish adverse possession. Where the intention is not to hold to the visible boundary, unless it is in fact the true line, the possession is not hostile; it is not under a claim of right; it is not adverse.

In *Bowers v. Ledgerwood*, 25 Wash. 14, 64 Pac. 936, this court quoted with approval from *Caufield v. Clark*, 17 Ore. 473, 475, 21 Pac. 443:

" 'If one by mistake . . . inclose the land of another, and claim it as his own, his actual possession will work a disseizure, but if ignorant of the boundary line, he makes a mistake in laying his fence, *making no claim, however*, to the lands up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the lands of the adjoining proprietor, his possession of the land is not adverse.' "

We continued to recognize this theory in subsequent decisions. *Suksdorf v. Humphrey*, 36 Wash. 1, 77 Pac. 1071; *McCormick v. Sorenson*, 58 Wash. 107, 107 Pac. 1055; *Snell v. Stelling*, 83 Wash. 248, 145 Pac. 466; *Lindberg v. Davis*, 164 Wash. 680, 4 P. (2d) 501; *Beck v. Loveland*, 37 Wn. (2d) 249, 222 P. (2d) 1066; and Washington cases collected

in annotation, "Adverse Possession—Mistake in Boundary," 97 A. L. R. 27.

■ It is true that possession originating in mistake *may* become adverse (*Snell v. Stelling, supra*), but the character of the possession, however, is a question of fact. *Mugaas v. Smith*, 33 Wn. (2d) 429, 206 P. (2d) 332, 9 A. L. R. (2d) 846; *Scott v. Slater, ante* p. 366, 255 P. (2d) 377.

Both parties are indefinite as to the time certain conversations occurred concerning the boundary between their properties. They are fixed at sometime between 1946 and 1949.

Appellant Brown testified that sometime after Mr. Frost had pointed out the true boundary stake to him, respondents called and wanted him to point out where the stake was. This he did, saying,

"After I showed them the stake, I just stepped back, and I said, 'Well, it looks like I will have to move my hedge. . . .' "

Of this same conversation, respondent Hubbard testified:

"Q. You say Mr. Brown pointed out the corner? . . . A. Yes. He told us—he says, 'That is the corner of your property, right there.' Q. Now, did you know exactly where the corner was up until that time? A. No. . . . At the time he pointed out that stake to us, he says, 'This is your line,' he says, 'I don't know whether my garage is on your property or mine, but,' he says, 'it is practically on the line. It might be a few inches one way or the other,' but, he says, 'my rabbit pen is on your property,' he says, 'I will admit that.' "

On cross-examination, appellant Brown testified:

"Q. And your intention in the occupancy and improvement of that property was based on the assumption that that was property that was included within the scope of your deed? A. That is right."

■ It is apparent that between the time of the conversations (1946-1949) to which reference has been made, and the posting of "no trespassing" signs, appellants changed their minds. However, the record amply supports the finding of the trial court that appellants and their predecessors

in interest did not claim or intend to claim as owners beyond the true boundary line for the statutory period required to vest title in them by adverse possession.

The judgment is affirmed.

GRADY, C. J., HILL, MALLERY, and OLSON, JJ., concur.

September 10, 1953. Petition for rehearing denied.