[No. 33154.   Department One.   September 1, 1955.]

HENDRIK V. MOURIK et al., Appellants, v. MYRA C. ADAMS, Respondent.[1]

*Hall, Cole & Lawrence* and *Melvin F. Buol,* for appellants.

*James C. McKnight* and *Joseph B. Smith,* for respondent.

DONWORTH, J.—Plaintiffs seek by this action to eject defendant from that portion of their city lot now occupied by defendant. Defendant resists the action by claiming title by adverse possession to the property in dispute which she now occupies (herein referred to as the disputed tract).

Prior to September 9, 1941, the east one-half of lot 5, block 3, Osner's suburban homes, King county, Washing-

[1]Reported in 287 P. (2d) 320.

ton, then an unimproved tract of land, was owned by Edith Hepburn Van Mourik. On the date mentioned, she caused this parcel to be divided by conveying to Violet Wolfe the north sixty feet thereof which abuts on north 90th street. Thereafter, Violet Wolfe subdivided her parcel into two lots (which we shall refer to as the Campbell and Adams lots respectively) and built a dwelling upon each lot. The Campbell lot is not involved in this controversy. The house on the Adams lot was built 1.1 feet from the south property line of the lot.

On January 2, 1942, Violet Wolfe contracted to convey this lot to John Seljevold, and on March 30, 1943, Seljevold took title thereto by warranty deed from Mrs. Wolfe's assignee.

In 1946, Seljevold listed the property for sale with a real-estate broker, and in the summer of 1946 caused a survey to be made of the property. The surveyor, after inspecting a map in the county engineer's office and other maps, but without reference to the recorded plat, all of which erroneously showed north 90th street to be sixty feet wide instead of forty feet in width, made his survey based on this misinformation. This resulted in the surveyor's report locating the south line of the Seljevold property ten feet south of its correct location. The real-estate broker, acting for the seller, showed the property to defendant Adams and purported to indicate the boundaries thereof by pointing out to her the stakes mistakenly placed by the surveyor on the south side of the property. Consequently, the south boundary pointed out by the broker to Mrs. Adams was, in fact, approximately ten feet south of the true south boundary and encroached upon the Mourik property to that extent. This encroachment constitutes the disputed tract involved herein. Seljevold conveyed the lot by warranty deed to Mrs. Adams on June 7, 1946.

The evidence is undisputed that, from the date of the construction of this house until sometime after defendant was in possession, there was no back porch on the dwelling. At that time, the rear door of the dwelling opened onto but

a single step consisting of a two-by-twelve plank placed on the ground and against the building. After taking possession, defendant had this step enlarged into a small unenclosed platform.

In April or May, 1947, Mrs. Adams caused a fence to be erected along the lines pointed out to her by the real-estate broker as being the four boundaries of her property, and in so doing thus enclosed within her fence the disputed tract. Plaintiffs are the successors in interest to Edith Hepburn Van Mourik in this parcel.

Plaintiffs did not live near their property. The first knowledge they had of this encroachment was in 1950, when they commenced construction of a dwelling upon their lot. At that time, they protested to defendant concerning the location of her fence. In January, 1952, plaintiff commenced an action in trespass against defendant for the recovery of the possession of the disputed tract. During the trial of that action, however, plaintiff took a voluntary nonsuit. Thereafter, they employed their present counsel, and on September 24, 1953, commenced this action by service of summons and complaint upon defendant.

On September 28, 1953, defendant made application for, and received, a King county building permit authorizing her to construct on the south side of the house a utility room and porch, which structure would extend 4.4 feet south of the true boundary of the property and onto plaintiffs' property. Against plaintiffs' protest, this addition was constructed and finished prior to the trial of this cause. At the conclusion of the trial, the court, in its oral opinion, expressed the view it had taken of the case as follows:

"But I think to the eye of any neighbor, or passerby like a book agent who came to the back door, it would appear that there was some space back of the back door of this house. That is open and notorious possession. The absence of a fence is immaterial. Seljevold at all times, from the time the house was located and the rear door made, used some space back of that house. They [Adams] are using it today. That is open and notorious possession for the reason that the 2.10 feet, if enclosed by a fence would be noticed by everybody—a book agent couldn't get in. And when it is

a city lot—or as it was then, in the area near the city—that was noticeable. So this woman defendant here now has whatever her predecessor had, which shows a reasonable amount back of that house. And if that is ten years, she has made good on ten years. . . .

"The question is, how much? The fence on the south of that lot is not old enough, but the reasonable distance is. Now I think that inasmuch as it has been fenced in for quite awhile, and the rule must be that when the question is one of title, it is residence property, the adverse possession must include ingress and egress. It could not be found to be limited by only the overhang of the eaves, because the value of a piece of property with no entrance is not so good. So I am forced to hold here that the facts are she has had 10 years possession of the 10 foot strip, open and notorious, and qualifies under the statute.

"I do not ignore that she never knew where it was. Strictly speaking, she doesn't know today. She followed stakes outlined by the real estate man, and she stood upon the written opinion of the real estate man as to title of real property, than whom nobody in North America knows less about the title to real property. But I have noticed for many years the real estate men make a moving contribution to the welfare of the bar association and the courts by manufacturing the cases, so I do not criticize him—I only say I notice that.

"So I think the law here to be applied is the 10-year statute, and the facts are that this woman, united with the experience of her predecessors in title, which she bought, is entitled to the use of this 10-foot strip, and this action must necessarily be dismissed."

Findings, conclusions, and judgment were thereafter entered dismissing with prejudice plaintiffs' action as not having been commenced within the time limited by law, and awarding costs to defendant. Plaintiffs appeal from this judgment.

The evidence shows that there never has been any discrepancy or overlapping in the respective legal descriptions of appellants' and respondent's lots, and that respondent does not have paper title to the area in dispute. At the commencement of the trial, the parties stipulated that each had paid taxes only upon the realty encompassed within their respective legal descriptions. In other words, respondent

has never paid taxes upon the disputed tract to which she now asserts title by adverse possession.

■ RCW 7.28.070 and RCW 7.28.080 each requires that the party asserting title by adverse possession must have, for seven successive years, paid all taxes legally assessed on such land. This stipulation, of itself, operates to preclude defendant from asserting acquisition of title to the disputed tract by adverse possession under the "seven-year statutes" mentioned above, because her failure to comply with this portion of the statute is fatal to the claimed right or defense. *Brownstin v. Brelle*, 193 Wash. 553, 76 P. (2d) 613.

Respondent did not introduce any evidence in support of her pleaded defense under the provisions of RCW 7.28.050, which relates to adverse possession under connected title deducible of record from the state or Federal government or from a public officer.

We are in agreement therefore with the trial court that, if respondent is to be successful in resisting the action, she must make out a case solely under RCW 4.16.020, which is the ten year statute of limitations for the acquisition of real property by adverse possession. Since respondent's possession of the property is less than ten years, she must resort to tacking onto her possession that of her grantors if she is to establish occupancy for the required period of time.

Seljevold, respondent's immediate predecessor in title, was not called as a witness. At the time of trial, he was reported to have been in Alaska. As we view the record, there is no competent evidence in this case upon which the court could base a finding that Seljevold's use of appellants' property was in any respect hostile to appellants' title. Nor did the court make a finding expressly ruling on that issue. The matter is inferentially treated in the court's oral opinion and in the following finding of facts, to which appellant has assigned error as being contrary to the evidence.

"3. . . . that upon taking possession of said premises, the said Seljevolds immediately began the use of said south door for purpose of ingress and egress and the occupation and use of said disputed tract for said purposes and for such other purposes for which the remaining outside

portions of said premises were being used, and, to fit it for said purposes, removed the wild grass and weeds therefrom and planted said disputed tract to lawn and placed flowers and shrubs thereon; . . .

"5. That defendant, Myra C. Adams, and those under whom she claims have been seized of and have been in the actual and uninterrupted, open and notorious, hostile and exclusive use and possession of said strip of land ten feet wide lying immediately south of said house and running the full length of said premises, denominated now by the plaintiffs as the disputed tract, and of the whole thereof, for more than ten consecutive years last past, prior to the filing of said amended complaint, claiming the same in good faith and under claims of right; that neither the plaintiffs nor their ancestors, predecessors or grantors, have been seized of or had the possession or use thereof within ten years last past before the filing of said amended complaint; and that this action was not commenced within the time limited by law."

We are of the opinion that the evidence preponderates against the two findings.

The evidence does not establish the time when Seljevold commenced removing the grass and weeds from the disputed tract and planting thereon lawn, flowers, and shrubs. Nor does the evidence show that in so doing Seljevold asserted a hostile claim. In deciding a case very similar to this one this court, in *Peoples Sav. Bank v. Bufford*, 90 Wash. 204, 155 Pac. 1068, said:

"But it is not every possession that will start the running of the statute. *There is a presumption attending always that one who enters into the possession of the property of another enters with the permission of the true owner, and holds in subordination to his title.* The statute begins to run from the date of possession only when it is sustained by a hostile intent to claim adversely, or, where possession is taken by mistake, the intruder exercises such dominion over the property as to put the true owner upon notice of the hostile claim. . . .

"But where one enters with the permission of the true owner—and one who enters by mistake having no intention to claim that which is not within the calls of his deed is upon no higher plane—the statute will not begin to run until the record owner has actual notice, or the land is put to such

uses as to put him upon notice that the occupant is not a mere trespasser, but is asserting a hostile claim.

"The presumption that one entering upon the property of another does so in subordination to the title of the real owner is a valuable right of property. The disseisor is put to the burden of proof (*Skansi v. Novak*, 84 Wash. 39, 146 Pac. 160) and the title is not to be overcome by evidence of entry and occupation alone, but the hostile intent must be clearly demonstrated."

Upon a review of the record in the instant case we are forced to the conclusion that the trial court erred in finding that there was any adverse possession of the disputed tract with hostile intent by respondent's grantors. *Peoples Sav. Bank v. Bufford, supra.*

Because respondent has not produced evidence to rebut the presumption that her grantors used the disputed tract in subordination of the title of the true owners, and because her possession alone was not of sufficient duration, she has failed to establish her claim of ten years adverse possession. It follows therefore that the court erred in entering judgment in this cause in favor of respondent.

Since respondent did not at any time during the trial of this case claim a prescriptive easement for purposes of ingress to and egress from the south entrance to her dwelling, we are not called upon to pass upon that matter.

Respondent calls our attention to the fact that, since error has not been assigned to finding of fact No. 2, the statements therein must be taken as the established facts of the case. The finding is ambiguous, and we do not read it as respondent does. It does not say that the Adams' house was located by Mrs. Wolfe in reliance upon Edith Hepburn Van Mourik's representations as to the boundaries. It does say, however, that in reliance upon these alleged representations Mrs. Wolfe "caused a doorway to be placed on the south side of said house for the purpose of egress and ingress," but it makes no mention of the area to and from which egress and ingress was thus obtained. It does not give the dimensions of the platform erected, nor does it say that the platform encroached upon the Mourik property. The fuel oil tank,

which was found to have extended "over forty inches south from the south side of said house onto the now 'disputed tract' ", was mounted on brackets on the south side of the house and would thus give rise to a claim of a prescriptive easement and not to title by adverse possession.

But even if we were to read this finding as respondent does, the facts therein would not support respondent's position, because such occupancy by Mrs. Wolfe would not be proof of a similar occupancy by Seljevold, and thus would not cure the fatal defect in respondent's defense discussed above.

Respondent concludes her brief with an argument that the judgment herein can be sustained on a theory other than the one adopted by the trial court. We have examined this argument and citations and do not deem it of sufficient merit as to warrant specific mention.

Appellants' brief contains a map of the property of the parties hereto (being a partial reproduction of plaintiffs' exhibit 9) which shows that the south boundary of the Campbell property is bounded by a fence, which fence is 1.5 feet south of the true property line. Appellants state in their brief that they have always maintained that this fence indicated the true north boundary of their property, and that they waive any claim to the land north of this fence line if it were extended straight across the disputed tract.

The judgment of dismissal is reversed, and the cause remanded to the superior court with directions to grant the writ of ejectment as prayed for in appellants' amended complaint as to all of the disputed tract except the north 1.5 feet thereof, and awarding costs to appellants.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

---

November 1, 1955. Petition for rehearing denied.