[No. 37657. Department Two. January 21, 1965.]

WALTER A. WOEHLER *et al., Respondents,* v. ROBERT D. GEORGE *et al., Appellants.*[*]

*Sanford Skidmore,* for appellants.

*Horton & Wilkins,* by *Hugh B. Horton,* for respondents.

SOULE, J.[†]—This is an action to quiet title, filed on July 29, 1963, in which the plaintiffs assert their rights based upon adverse possession. Defendants appeal from a judgment quieting title in plaintiffs.

In 1950, the plaintiffs acquired title to Tracts 11, 12 and 13, Highlands Plat F, in Benton County. Tract 13 was sepa-

[*]Reported in 398 P. (2d) 167.

†Judge Soule is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

rated from Tract 11 by a dedicated but unopened county road which was vacated in 1954.

Tract 10, lying immediately to the north of Tract 11, was owned and occupied by John and Muriel George, parents of the defendant Robert D. George. Tract 10 was conveyed to the defendants in 1962.

The following schematic drawing, which is not to scale but is based upon exhibit No. 9, shows the relation of the tracts.

Prior to 1950, and thereafter, a fence on the George property extended from west to east and then to the north, inside the limits of Tract 10. Walter Woehler placed the fence on exhibit No. 9 by aid of an aerial photograph and portrayed it as running from point X through Z to point 3, then swinging markedly north to point 4, on to the north line of the George property. Between X and Z, and Z and 3, it was not straight but formed two shallow segments of a circle. At points Z and 3 the fence line and the platted boundary lines substantially coincide.

The disputed land is in something of a gully and is described as rough, dry land. At the easterly end, the quality of the land apparently deteriorates and the topography becomes even more difficult.

The distances along the fence have been roughly scaled from exhibit No. 9, and appear to be approximately as follows: point X to Z, 512 feet; Z to 3, 537 feet; 3 to 4, 400 feet.

It should be noted that point Z is this court's designation of the meeting point of lines placed on exhibit No. 9. This point and the distances are described to assist in understanding the physical relation of the parcels.

The plaintiffs presented the matter to the trial court as three separate parcels designated "A", "B", and "C" and testified concerning acts of possession relating to each. After receiving a favorable decision, they prepared findings of fact in which separate findings were made as to each parcel.

Error is assigned to the sufficiency of the findings and the evidence in support thereof. The findings are as follows:

Finding No. 5:

"That the old fence made approximately two triangular patches of ground and a third parcel of ground that had been shown on Exhibit 9. That on the Exhibit these tracts are referred to as A, B and C and will be so referred to herein. That in triangle A in 1952, plaintiffs exercised dominion by their driveway and by fill and by installation of a drainfield. That in 1953, they exercised dominion by protesting cans being thrown on their side of the fence and by removing a portion of the old fence. Since that they, plaintiffs have exercised dominion in various ways including putting in additional fence in part and by using the property for pasture and as a place for storing machinery."

Finding No. 6:

"That as to triangular parcel B, this was utilized for pasture and sagebrush was cleared."

Finding No. 7:

"That as to parcel C, there was clearing and use of the land for pasture. That the use was open and apparent to defendants and their predecessors in interest and that such useage [sic] continued for a period of more than ten (10) years prior to any protest being made and was adverse to the claim of defendants."

Finding No. 8:

"That the plaintiffs claimed the old fence was a boundary and exercised dominion to the fence line. That the fence line still exists save and except as to the western portion of triangular parcel A and that no dispute exists as to where the old fence was at the place where it was removed, it being in a straight line from the location of the remains of the old fence to the corner indicated on Exhibit 9."

Error is also assigned to the failure of the trial court to grant defendants' motion to dismiss at the end of plaintiffs' case and to its refusal to grant judgment for the defendants. Disposition of the previously mentioned assignment of error will necessarily dispose of the errors claimed in connection with denial of the motion and refusal to grant judgment.

Despite the trial court's original impression to the contrary, as evidenced by its oral decision, this is not a case where all the parties considered the fence as the boundary,

as in *Niven v. Sheehan,* 46 Wn. (2d) 152, 278 P. (2d) 784. Only the plaintiffs so considered it.

■ Except for the one occasion hereafter noted, nothing was ever said to the Georges from which they might reasonably be put on notice of an adverse claim. However, particularly with respect to parcel A, there were acts from which hostile intent could be inferred, and this is sufficient. *Faubion v. Elder,* 49 Wn. (2d) 300, 301 P. (2d) 153; *Booten v. Peterson,* 47 Wn. (2d) 565, 288 P. (2d) 1084; *O'Brien v. Schultz,* 45 Wn. (2d) 769, 278 P. (2d) 322.

Concerning parcel A, the trial court was entitled to believe that the first open acts of disseisin took place in 1952, when fill dirt was put in the gully, a drain field was installed and the plaintiffs built a driveway to service the home then being placed on Tract 13. The record supports the trial court's finding that, in 1953, they exercised further dominion by temporarily removing a portion of the fence and by protesting to John George the action of a tenant on the George property who threw tin cans over the fence on to parcel A, and that ever since 1953, they have exercised various acts of dominion, including fencing of a portion of parcel A for pasture and using other parts of it for the storage of machinery.

It is true that the finding does not expressly state that possession has been continuous and without interruption, but this seems to us implicit in the words actually used. Defendants' brief does not suggest that there has been any interruption in the continuity of use and a reading of the record indicates that there was none until 1962, when this dispute arose and it became prudent to avoid provocative acts until the title dispute could be settled by legal action. Even then, plaintiffs did not remove their improvements and have never abandoned their claim.

■ The defendants argue that adverse possession cannot run against their interest in that portion of parcel A lying within the county road, since the road was not vacated until 1954. In support of their argument, the defendants cite *O'Brien v. Schultz, supra; Gillis v. King Cy.,* 42 Wn. (2d) 373, 255 P. (2d) 546; *Mueller v. Seattle,* 167 Wash. 67,

8 P. (2d) 994; *Raleigh-Hayward Co. v. Hull,* 167 Wash. 39, 8 P. (2d) 988.

As to the public, this is doubtless true, but the authorities cited do not reach the point here at issue. Defendants' right to the vacated street is dependent upon their right to parcel A, as abutting owners. Upon vacation of the street, title reverted to the abutting owners. *Bradley v. Spokane & Inland Empire R. Co.,* 79 Wash. 455, 140 Pac. 688. Whatever the rights may be as between plaintiffs and Benton County, having now lost their right to parcel A, they can assert no interest in the vacated street.

■ Turning to parcel B, finding No. 6 is silent as to when the plaintiffs began to use it for pasture and when sagebrush was cleared. In order to support a judgment, a finding that the use was adverse for a period of 10 years is essential and there is no such finding, either express or implicit. Finding No. 6 is insufficient to support a judgment with respect to parcel B. Nor is the sufficiency of finding No. 6 assisted by the general language in finding No. 8, which states that the plaintiffs exercised dominion to the fence. This latter finding does not mention the essential period of time.

We note in passing that the evidence on when use commenced is extremely vague. Walter Woehler testified as follows:

"Q. You cleared the land of sagebrush and—THE COURT: When, are you talking about? Q. About when was that? A. Oh, it is pretty hard to say. I imagine 53-54."

■ Since the plaintiffs have the burden of proving that the adverse use started more than 10 years prior to July 29, 1963, a finding that the act of clearing sagebrush took place prior to July 29, 1953, rather than in the latter part of 1953 or in 1954, could only be based upon speculation and no one has suggested that the land was used for pasture before it was cleared.

Finding No. 7, relating to parcel C, is challenged on the ground that the evidence does not support a finding of adverse use for 10 years. The challenge must be upheld.

The only testimony concerning the date of the first activity on parcel C is that of plaintiff, who at one time, fixed the date as 1955 or 1956, and later fixed it as around 1954.

The judgment of the trial court is affirmed as to parcel A, and reversed as to parcels B and C.

DONWORTH, FINLEY, WEAVER, and HAMILTON, JJ., concur.