[No. 131-40969-1. Division One. March 30, 1970.]
Panel 2

JOHN ROGNRUST et al., *Respondents*, v. DON L. SETO et al.,
*Appellants*.

*Trethewey, Brink & Wilson, Daniel Brink,* and *Robert Earl Smith,* for appellants.

*Mullavey, Hageman & Treece* and *Richard L. Prout,* for respondents.

HOROWITZ, A. C. J.—Plaintiffs Rognrust recovered judgment against the defendants Seto fixing the boundary line between their adjoining tracts of land in accordance with a written survey and granting incidental relief. The trial court rejected Setos' contention that by adverse possession they were entitled to an approximate 2-foot strip of the plaintiffs' property so adjudged. Setos appeal, their assignments of error raising the common question as to whether there is substantial evidence to support the court's findings rejecting their claim of adverse possession.

Lot 21 is located immediately north of lot 20. Each lot is approximately 50 feet by 100 feet located in block 60, Denny & Hoyt's Addition to the city of Seattle. The common unmarked easterly-westerly boundary line as established by survey between lots 21 and 20, extends for approximately 100 feet along the defendants' southern boundary of lot 21, which boundary at the same time is the northern boundary of plaintiff's lot 20. The eastern boundary of each lot is a city street.

On October 1, 1953, Mrs. Bertha L. Reid contracted to purchase lot 21 from one Minnie Osburg. The purchaser went into immediate possession. At that time there was a board fence located on lot 20 about 2 feet south of the easterly-westerly boundary line of lot 21. Mrs. Reid testified that she knew nothing about the fence other than that it was there. She did not know who had built it. She kept the fence in repair and utilized the entire area of her lot 21 property and the 2-foot strip on lot 20 up to the old board fence as a vegetable and flower garden. She treated the line of the old fence as the southerly boundary line of her property. She at no time testified that during the period of

her possession she claimed to be the owner of the property to the line of the old fence whether or not that line represented the true boundary line.

In March, 1961, she contracted to sell lot 21 to the Setos who thereupon went into possession. The descriptions of lot 21 in the real estate contract from Minnie Osburg to Bertha L. Reid and in the real estate contract of Bertha L. Reid to the Setos, her successor, are identical. Don L. Seto testified that he went into possession immediately after executing his contract of purchase; that at that time there was an old fence (to the existence of which Bertha L. Reid testified) on the property with fence posts about 8 feet apart with a wire on part of the fence; that the fence remained standing until the plaintiff personally tore it down after July, 1966; that he, Seto, had always been told from the time he first saw the property, that the old fence was on the boundary line of lot 21; that he understood and accepted it as such at all times since and continued to use the area as a vegetable and flower garden up to the line of the old fence. Mr. Seto likewise did not testify that during the period of his possession he claimed the property as owner to the line of the old fence whether or not it represented the true boundary line. In 1964 the Setos constructed a new fence running in an easterly-westerly direction approximately 2 feet north of the old fence. The new fence, according to a survey made in 1966, or thereafter, encroached on lot 20 by as much as 9 inches at the westerly end of the easterly-westerly boundary line. Dona Seto, defendants' daughter, who was 13 years of age when the Setos moved into the house on lot 21, testified that the old fence was about 25 inches to the south of the new fence, and that she and her mother helped maintain the flower garden and a parking strip, helped mow the lawn and did some weeding and other work by the old fence.

Plaintiffs purchased lot 20, then unimproved, in July, 1966, and went into possession intending to build a 6-unit apartment on the lot. Plaintiff Rognrust testified that the lot was overgrown by weeds and blackberry bushes; that

there was then a fence (the 1964 fence) on the boundary line between lots 21 and 20, but that he didn't see any other fence; that when he started to clear the lot he discovered some parts of an old fence but it was lying down, partly leaning up against the new fence; that one could not see the parts of the old fence from the street or sidewalk if one were looking at the lot; that one couldn't determine where the old fence had been by the boards that were left there; and that one could not determine where the stake holes for the posts were because they were rotted out by the ground. A neighbor, Earl Benedict, testified with reference to the old fence that "it was down and you hardly knew there was the fence there."; that the old fence couldn't be seen because the brush was about 10 feet high; and that there was an old fence but he had no recollection of the location of the older fence, "You couldn't tell where it was at."

In due course, plaintiffs made demand upon the Setos to move the 1964 fence to the true boundary line in accordance with the legal description of the lots as confirmed by the plaintiffs' survey. The defendant Don Seto testified to certain conversations he had with the plaintiff Rognrust but there was a sharp disagreement in their testimony concerning the content of the conversations and in their testimony concerning the location of or ability to locate the line of the old fence. Neither the plaintiff Rognrust nor the neighbor Benedict testified to the condition or location of the old fence or the use made of the land by either Bertha L. Reid or the Setos prior to July, 1966.

The Setos having refused to move the 1964 fence, plaintiffs brought suit to adjudicate the true boundary lines of lots 21 and 20 and to require the Setos to move the 1964 fence off of plaintiffs' lot 20. The trial court rejected Setos' claim of adverse possession finding that "the defendants and their predecessors in interest have not occupied in an open, hostile, notorious, and adverse manner any property described in paragraph 2 above herein, and in fact there is no adverse possession; . . ." and pursuant to its conclusion of law "that there is no adverse possession by the

defendants on any property currently or previously owned by the plaintiff . . ." entered a decree dismissing the defendants' claim to the 2-foot strip claimed which was bounded on the south by the line of the old fence. In its oral opinion, to which we resort for the purpose of clarifying the findings (*Heikkinen v. Hansen,* 57 Wn.2d 840, 360 P.2d 147 (1961); *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963)), the court said: "Nobody is getting a fifty-two foot lot when they bought fifty, not on evidence like this."

The question presented is whether there is substantial evidence to support the court's findings on which the decree disallowing the claim of adverse possession is based. *Mesher v. Connolly,* 63 Wn.2d 552, 388 P.2d 144 (1964).

 Under RCW 4.16.020 title may be acquired by adverse possession for the 10-year statutory period. Successive periods of possession may be tacked to each other to make up the required 10-year statutory period when "there is privity between successive occupants holding adversely to the holder of the true title continuously . . ." *Faubion v. Elder,* 49 Wn.2d 300, 301 P.2d 153 (1956). Mere possession by an occupant of the real property is not enough, however, to permit the acquisition of title by adverse possession. The possession must be accompanied and characterized by a certain state of mind described and summarized in *Krona v. Brett,* 72 Wn.2d 535, 433 P.2d 858 (1967) as follows:

> [T]o constitute adverse possession, there must be actual possession which is uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith for the statutory period. *Skansi v. Novak,* 84 Wash. 39, 146 Pac. 160 (1915). The nature of possession and attendant acts necessary to constitute adverse use as to a residential parcel or property are deemed sufficient if a person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition. *Mesher v. Connolly,* [63 Wn.2d 552, 388 P.2d 144 (1964)].

The fact of possession and the existence of the requisite elements making up the state of mind that must exist before adverse possession can be said to ripen into title, raise questions of fact. As stated in *Mugaas v. Smith,* 33 Wn.2d 429, 206 P.2d 332, 9 A.L.R.2d 846 (1949):

> The character of . . . possession over the statutory period is one of fact, and the trial court's finding in that regard is to be given great weight and will not be overturned unless this court is convinced that the evidence preponderates against that finding.

See also *El Cerrito, Inc. v. Ryndak,* 60 Wn.2d 847, 376 P.2d 528 (1962); *Scott v. Slater,* 42 Wn.2d 366, 255 P.2d 377 (1953).

The party claiming title by adverse possession has the burden of proving the existence of each of the elements constituting adverse possession. *Woehler v. George,* 65 Wn.2d 519, 398 P.2d 167 (1965); *Brown v. Hubbard,* 42 Wn.2d 867, 259 P.2d 391 (1953); *Scott v. Slater, supra; Skansi v. Novak,* 84 Wash. 39, 146 P. 160 (1915). The burden of proof includes proving the intention with which the possession is held; that is, that the possession is "hostile" and "under claim of right." That burden is upon the claimant. As stated in *Brown v. Hubbard, supra,* at 869:

> Where the intention is not to hold to the visible boundary, unless it is in fact the true line, the possession is not hostile; it is not under a claim of right; it is not adverse.

See also *Preble v. Maine Central R. R.,* 85 Me. 260, 27 A. 149 (1893); Annot., 97 A.L.R. 14, 21 (1935). The claimant's burden of proof also includes the burden of proving the boundary line of the property claimed by adverse possession for the 10-year statutory period. *Scott v. Slater, supra.* The matter of the intention with which the property is held is one within the knowledge of the adverse claimant and it is not unreasonable to require him to prove that intention whether by direct testimony or by circumstantial evidence. Accordingly, if he, or the person in privity with him whose possession is sought to be tacked to his own, fails to testify to that intention or to facts within his knowledge from

which the intention may be inferred, the trial court may itself infer that had such testimony been given, it would not have aided the claimant. *Harold v. Toomey,* 92 Wash. 297, 158 P. 986 (1916).

■ We cannot determine from the findings or the trial court's opinion whether the court accepted the testimony on behalf of the defendants, but held it legally insufficient to discharge the burden of proof (See *O'Brien v. Schultz,* 45 Wn.2d 769, 278 P.2d 322 (1954)) or whether he rejected that testimony in whole or in part, thereby determining that there was not sufficient credible evidence to establish adverse possession. See *Mourik v. Adams,* 47 Wn.2d 278, 287 P.2d 320 (1955). In passing upon the appellants' claim that the court's findings are not supported by substantial evidence, we must not ignore the possibility that those findings were entered after weighing the evidence and determining the issues of credibility adversely to the Setos. In *N. Fiorito Co. v. State,* 69 Wn.2d 616, 419 P.2d 586 (1966) the Supreme Court pointed out that in weighing the evidence

> the trial court, as the trier of the facts, is not required to accept all of plaintiff's evidence as true or accord to plaintiff the most favorable inferences that may be drawn from the evidence. On the contrary, in reaching its decision as to the viability of plaintiff's case, the trial court necessarily must appraise the credibility of the testimony and the force of any exhibits, and may believe or disbelieve plaintiff's evidence, resolve testimonial conflicts, evaluate circumstantial evidence, draw reasonable and allowable inferences, and otherwise appropriately determine, as a trier of the facts, the facts revealed and sustainable by the evidence then before the court.

See also *Cuillier v. Coffin,* 57 Wn.2d 624, 358 P.2d 958 (1961).

■■ The evidence of adverse possession came from the testimony of Mrs. Reid, the defendant husband Seto, and his daughter. These witnesses were not disinterested. Mrs. Reid, as contract vendor, could potentially benefit from a decree in favor of the defendants Seto. See *McAuliff v. Parker,* 10 Wash. 141, 38 P. 744 (1894). Furthermore, the defendants Seto owed her an unpaid balance under their

real estate contract. The defendant Don Seto was an interested party. His daughter was a member of his family. In addition, the testimony of the defendant Don Seto was contradicted in various material respects including the matter of the precise location of the old fence claimed by the defendant Seto to be the true boundary line. The court was not required to accept the testimony of these witnesses. *N. Fiorito Co. v. State, supra; Hunter v. Wethington,* 205 Mo. 284, 103 S.W. 543 (1907) ; See *Terwilliger v. Marion,* 222 S.C. 185, 72 S.E.2d 165 (1952); *Keene v. Behan,* 40 Wash. 505, 512, 82 P. 884 (1905); *Gibson v. Chicago, M.&P.S.Ry.,* 61 Wash. 639, 112 P. 919 (1911); *Carson v. Mills,* 49 Wn.2d 597, 304 P.2d 712 (1956); *Hoyt v. Hoyt,* 46 Wn.2d 373, 281 P.2d 856 (1955). When a trial court's determination of an issue hinges primarily upon the credibility of the evidence, the trial court's determination will not be disturbed on appeal. *Carson v. Mills, supra; N. Fiorito Co. v. State, supra.* At best, on the issue of whether the possession of Mrs. Reid and the defendant Don Seto were each hostile and under claim of right in good faith, the evidence permitted alternative inferences; namely, that the respective intentions of Mrs. Reid and of the defendant Don Seto, were to claim as owner to the line of the old fence even if it did not represent the true boundary line; or that the respective intentions were to claim as owner only if it represented the true boundary line. See *Brown v. Hubbard, supra,* and *Taylor v. Talmadge,* 45 Wn.2d 144, 273 P.2d 506 (1954). The trial court was not required to draw inferences favorable to the defendants Seto. As stated in *Wickwire v. Reard,* 37 Wn.2d 748, 759, 226 P.2d 192, 23 A.L.R. 323 (1951): "the statute of limitations, although not an unconscionable defense, is not such a meritorious defense that either the law or the facts should be strained in aid of it." The trial court could have believed that the plaintiff did not sustain his burden of proof "on evidence like this." We cannot hold that the trial court erred.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.

Petition for rehearing denied May 11, 1970.